**In re Douglas D. & Jo Ann ERFOURTH, Debtors.**

**7TH PROBATE COURT FOR the COUNTY OF CHARLEVOIX, Plaintiff,**

v.

**Douglas D. & Jo Ann ERFOURTH, Defendants.**

**Bankruptcy No. HT 90–80016. Adv. No. 90–8290.**

United States Bankruptcy Court, W.D. Michigan.

May 1, 1991.

---

Ronald A. Schuknecht, Traverse City, Mich., for plaintiff.

Paul I. Bare, Traverse City, Mich., for debtors-defendants.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the Court to determine the dischargeability of the Debtors' obligation to the 7th Probate Court for the County of Charlevoix, pursuant to 11 U.S.C. § 523(a)(5). For the reasons stated below, the debt is declared to be dischargeable.

## FACTS

The facts in this case are not in dispute. This case was scheduled for trial on February 7, 1991, but in a telephonic status conference conducted on February 5, 1991, the parties agreed that such a trial was unnecessary due to the absence of a factual dispute. The parties agreed to submit the legal issue of the applicability of § 523(a)(5) to the Court on the pleadings.

The Debtors are the parents of a son, Douglas Benjamin Erfourth. In 1982, when he was 10 years old, Douglas was charged with larceny and was brought before the Juvenile Division of the Charlevoix County Probate Court. No information was provided to the Bankruptcy Court as to the disposition of this charge. In 1984, Douglas was again charged, this time with malicious destruction of property. Again, no information was provided regarding the disposition of this charge. On April 28, 1986, when he was 14 years old, Douglas was charged with the breaking and entering of a residence, and with larceny. At that time, the juvenile court entered an Order of Commitment, which made Douglas a temporary ward of the court. He was allowed to remain in his parents' home, and the Debtors were ordered to pay $10.00 per month to the court for costs and were put on notice that they would be held responsible for the costs of counseling services as well. On July 15, 1987, another order was entered which continued the temporary wardship and the reimbursement costs provided for in the previous order.

Prior to the juvenile court's scheduled review of the July 15th order, Douglas committed an unauthorized entry without breaking. On November 25, 1987, he was brought before the court, which retained temporary wardship and committed him to a group home. In addition, the court continued the reimbursement costs. This order was scheduled to be reviewed in six months' time. On May 6, 1988, Douglas was returned to the Debtors' home but remained a temporary ward of the court. The court continued the previously ordered reimbursement costs.

On July 11, 1989, Douglas was charged with receiving or concealing stolen property. On August 9, 1989, the juvenile court entered an order entitled a Supplemental Order of Commitment, which kept Douglas as a temporary ward of the court and provided that the reimbursement costs were to be increased to $20.00 per month per parent, effective September 1, 1989. Since Douglas was five months away from his eighteenth birthday and was also facing pending criminal charges in the Circuit Court, the court entered a second order on September 7, 1989, entitled an Order Terminating Court Jurisdiction. The order provided that while the court was terminating jurisdiction, it was reserving the right to collect reimbursement costs from the Debt-

ors. The order also stated that the Debtors' reimbursement payment was to be increased to $400.00 per month, effective November 1, 1989. It is unclear why two orders entered one month apart, by the same judge, contain such divergent repayment schedules.

On January 7, 1990, the Debtors' filed their Chapter 7 bankruptcy petition. On February 8, 1990, the juvenile court entered an Order for Reimbursement. It provides that the total cost incurred during Douglas' involvement with the court system was $17,753.37. The figure is based on court-appointed attorney fees of $212.00, Department of Social Services counseling costs of $1,617.95, Department of Social Services group home placement costs of $15,523.42, and court service fees of $400.00. The court order states that the Debtors are held responsible for $15,000.00. The Debtors had previously paid $400.00, so the balance owing is $14,600.00. The balance consists of $14,414.25 in costs incurred by the Department of Social Services and $185.75 in attorney fees. The order also provides for monthly payments of $290.00. The Debtors have not made any payments, and the juvenile court filed the present proceeding on July 26, 1990, to determine the dischargeability of the debt.

## LEGAL ARGUMENTS

The parties agree that their dispute centers on the applicability of § 523(a)(5) to the undisputed facts. That subsection provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

agreement, but not to the extent that—

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

The juvenile court argues that a parent is required to financially support its child, and the court did so for the Debtors through court-ordered services. Thus, the Debtors owed a financial support obligation to their son, and payment on that debt is now owed to the court. Alternatively, the juvenile court argues that the debt was assigned to it pursuant to § 523(a)(5)(A).

The Debtors do not dispute that as parents, they have a duty to support their child, nor that they would be responsible for the court-ordered reimbursement costs absent bankruptcy. However, the Debtors focus on the language of § 523(a)(5), and maintain that since the support obligation is not owed "*to* a spouse, former spouse, or child of the debtor," (emphasis added) but rather, *to a court*, the debt is dischargeable. The Debtors acknowledge that a valid assignment might create a nondischargeable debt, but that no such assignment exists. Thus, this case differs from the typical § 523(a)(5) proceeding, where the court is asked to determine whether the debtor's obligation is actually in the nature of alimony, maintenance or support.

## DISCUSSION

Neither party disputes the Debtors' basic parental obligation for their son's support. Indeed, it is mandated by the language of Mich.Comp.Laws Ann. § 722.3(1), which states:

> The parents are jointly and severally obligated to support a minor unless a court

of competent jurisdiction modifies or terminates the obligation or the minor is emancipated by operation of law, except as otherwise ordered by a court of competent jurisdiction.

It is clear from the language of this statute that the Debtors had a statutory duty to support their son, and conversely, that Douglas had a right to be supported by his parents. If the Debtors failed to support Douglas pursuant to the statute, he could have enforced the duty of support by bringing an action in the state circuit court:

The duty of support may be enforced by the minor, his or her guardian, any relative within the third degree, an authorized government agency, or if the minor is being supported in whole or in part by public assistance under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws, by the director of the state department of social services or his or her designated representative, or by the director of the county department of social services or his or her designated representative of the county where an action under this act is brought.

Mich.Comp.Laws Ann. § 722.3(2).

It is clear from the facts of this case that Douglas' support did not come solely from his parents. The costs associated with Douglas' court involvement were incurred by the Department of Social Services pursuant to state statutes, and those statutes provide that the costs are recoverable from either Douglas or the Debtors. Each time Douglas was brought before the juvenile court, he had a right to legal counsel. Mich.Comp.Laws Ann. § 712A.17c(1). Due to his family's lack of financial resources, the court appointed an attorney to represent Douglas. Mich.Comp.Laws Ann. § 712A.17c(2). Upon such an appointment, the court had discretion to require Douglas or his parents to be responsible for the attorney fees, and ordered that the Debtors be responsible. Mich.Comp.Laws Ann. § 712A.17c(8). As part of the court's attempts to rehabilitate Douglas, he was alternately placed in his parents' home and a group home, pursuant to Mich.Comp.Laws Ann. § 712A.18(1)(b)–(1)(e). For the group home confinement, the court was required to order reimbursement for the costs incurred:

An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service.

Mich.Comp.Laws Ann. § 712A.18(2). Thus, the court was compelled to order reimbursement against Douglas or his parents, and ordered that the Debtors be responsible. Of the $14,600.00 that the court is seeking to have declared nondischargeable, $14,414.25 is for the group home placement under a mandatory reimbursement order, and $185.75 is for court-appointed attorney fees under a discretionary reimbursement order.

At no time did the juvenile court order that Douglas be solely or jointly responsible for the $15,000.00 in aggregate costs. Thus, any argument that a debt is currently owed to Douglas, with mere payment to the juvenile court, is without merit. The fact that Douglas is not currently liable on the debt significantly distinguishes this case from the case of *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). In that case, the debtor filed a Chapter 7 petition, and sought to discharge a $21,611.32 obligation that arose from a separation agreement. *Id.* at 1105. In the agreement, the debtor agreed to assume five joint debts of he and his spouse, and to hold her harmless on the debts. *Id.* at 1105. The primary issue before the Sixth Circuit was whether the obligation to hold the spouse harmless on the debts was dischargeable pursuant to § 523(a)(5).

Comparing these facts to those in the present case, the Debtors have filed a Chapter 7 petition, and are seeking to have declared dischargeable a $14,600.00 obligation arising from a court order. The Debtors did not agree to pay this money, but rather, were ordered to pay it as support by the juvenile court. The issue is whether there is a § 523(a)(5) nondis-

chargeable obligation to Douglas to reimburse the juvenile court on his behalf.

In *Calhoun*, the Sixth Circuit acknowledged that "[t]he initial question is whether those obligations not payable *directly* to the former spouse are nondischargeable under § 523(a)(5)." *Id.* at 1106 (emphasis in original). In resolving this matter, the Court held "that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable." *Id.* at 1107. Thus, in the present case, if the Debtors owe a debt to their son, the fact that actual payment on the debt is to be made to the juvenile court is irrelevant.

Under the facts of *Calhoun*, the debtor agreed with his spouse to fully pay their joint debts. As far as the creditors were concerned, the spouse was still liable on the debts. If any creditor collected against her, she could seek indemnity from the debtor under the terms of their hold-harmless agreement. Comparing this scenario to the present case, the Debtors were ordered to pay this debt. While the juvenile court could have held Douglas responsible for the debt pursuant to Mich.Comp.Laws Ann. §§ 712A.17c(8) and 712A.18(2), it did not do so. In *Calhoun*, the debtor's spouse was presently liable on the debts. Douglas is not. So, while Douglas had a right to pursue his parents for support pursuant to Mich.Comp.Laws Ann. § 722.3(2) if the juvenile court had collected these support costs from him, that fact is not before me. This debt is not owed to Douglas, but rather, to the juvenile court.

Since this debt is owed to the juvenile court, it is dischargeable unless a valid assignment exists. Pursuant to § 523(a)(5)(A), a support debt cannot be assigned to a third party unless the assignee is the federal government, the state government, or a political subdivision of the state. There is no question that the juvenile court fits into that category of assignees, but there has been no valid assignment.

Under the old Bankruptcy Act, there was a comparable provision to § 523(a)(5), being 11 U.S.C. § 35(a)(7). However, there were no provisions permitting assignments to governmental entities. In three opinions out of this Court, Judge Nims and Judge Benson held that despite a state law assigning child support obligations to the state when a parent applied for assistance, such assignments were not contemplated by Congress, and the obligations were therefore dischargeable. *Jaehnig v. Zimonick (In re Zimonick)*, No. BG 75–562 B 6 (W.D.Mich. Nov. 5, 1975); *Shreve v. Houston, et al. (In re Shreve)*, No. NK 72–271 B 8 (W.D.Mich. July 22, 1975); *In re Ashby*, No. NK 72–266 B 8 (W.D.Mich. Dec. 20, 1973).

In 1975, Congress enacted an amendment to the Social Security Act, and provided that in new cases filed after July 1, 1975, child support obligations assigned under the Social Security Act to the state as a condition for government assistance would be nondischargeable. 42 U.S.C. § 656(b). When the new Bankruptcy Code was later enacted, § 656(b) was repealed, but the new support provision found at § 523(a)(5) did not contain a provision which allowed assignments to governmental entities. Thus, bankruptcy courts were right back to their prior positions, and any such assignments rendered support obligations dischargeable.

To rectify this, Congress amended § 523(a)(5)(A) in 1981 to hold nondischargeable any child support obligations assigned as a condition for assistance under the Social Security Act. In 1984, the subsection was amended again, and child support obligations were permitted to be assigned not only under the Social Security Act but also to the federal government, a state government, or any political subdivision of a state. Thus, the 1984 amendment might enable the juvenile court in this case to obtain a judgment of nondischargeability *if* a valid assignment existed.

The state statutes allowing or requiring the juvenile court to order reimbursements do not provide for the assignment of the child's right to support to the court or any state agency. Additionally, the Order of Reimbursement entered on February 8, 1990, does not recite the Debtors' support

obligation to Douglas nor provide for an assignment of his right to it to the juvenile court. Since this debt is owed to the juvenile court, there must be an assignment of it from Douglas to the juvenile court or some designated state agency in order for the debt to be nondischargeable. Absent such an assignment, this is nothing more than a third party debt, which was intended by Congress to be discharged in order to give debtors their fresh start. While such a result may seem inequitable given the state's support of Douglas, the strictures of § 523(a)(5) and state law dictate such a result. If such debts are to be nondischargeable, either Congress or the Michigan Legislature, and not this Court, must act.

## CONCLUSION

The Debtors' obligation, in the amount of $14,600.00, is declared to be dischargeable. Since this debt is not owed to the Debtors' son, but rather, to the juvenile court, and no valid assignment exists, it does not fall within the purview of § 523(a)(5).