In re Debra Kay PLATTER, Debtor.

**DEKALB COUNTY DIVISION OF FAMILY AND CHILDREN SERVICES, Plaintiff–Appellant,**

v.

**Debra Kay PLATTER, Defendant–Appellee.**

No. 97–2761.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1997.

Decided March 26, 1998.

Jon B. Laramore, Andrew L. Hedges (argued), Office of the Attorney General, Kirk D. Carpenter, Mefford & Carpenter, John Wood, Indiana Family & Social Services Administration, Indianapolis, IN, for Plaintiff–Appellant.

Steven J. Glaser (argued), Blaser & Ebbs, Fort Wayne, IN, for Debtor, Defendant–Appellee.

Before KANNE, ROVNER and EVANS, Circuit Judges.

KANNE, Circuit Judge.

In this appeal, the DeKalb County Division of Family and Children Services ("DFCS"). claims that the debt which the debtor, Debra Kay Platter, owes it for support of her delinquent minor son is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). The district court affirmed the decision of the bankruptcy court which held this debt dischargeable. Because we agree that the debt does not fall within the requirements of § 523(a)(5), we affirm.

## I. HISTORY

Debra Platter is the mother of Trevor Adam Storey. The DeKalb (Indiana) Circuit Court determined that Trevor was a juvenile delinquent and placed him in a residential treatment center. Trevor spent approxi-

mately 25 months in treatment centers at a cost of $65,565. A provision of the Indiana Code requires a parent to repay DFCS for assistance it provides a child. *See* Ind.Code § 31–6–4–18(b). Relying on this provision, the DFCS filed a request for reimbursement from Platter with the same Indiana trial court. That court has yet to rule or hold a hearing on this request.

On July 10, 1996, Platter filed a petition for relief under Chapter 7 of the Bankruptcy Code. Attempting to forestall discharge of the debt Platter owes it, DFCS initiated an adversary proceeding against Platter in the bankruptcy court on July 29, 1996. DFCS argued that Platter's debt falls under a provision in the Bankruptcy Code that makes certain child support debts nondischargeable. *See* 11 U.S.C. § 523(a)(5). After analyzing the divided authority on this issue, the bankruptcy court held Platter's debt dischargeable. *See DeKalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, No. 96–1087, slip op. at 7 (Bankr.N.D.Ind. Feb. 7, 1997). The court concluded that a debt owed to DFCS for housing a delinquent youth did not satisfy 11 U.S.C. § 523(a)(5) because it is not owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child...." *See id.* at 2 (quoting 11 U.S.C. § 523(a)(5)).

On June 11, 1997, the District Court for the Northern District of Indiana affirmed this decision. *See DeKalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, No. 97 CV 97, slip op. at 3 (N.D. Ind. June 11, 1997). It held that a court order for reimbursement to DFCS is not a debt owed to a child of the debtor for support of the child since the order does not require payment to the child or to DFCS on the child's behalf. *See id.* at 8–9; *see also* Ind. Code § 31–6–4–18(b). DFCS appealed to this Court.

## II. ANALYSIS

▮ When we review a district court's decision to affirm a bankruptcy court's ruling, we use the same standard of review as the district court. *See Kravit, Gass & Weber v. Michel (In re Crivello)*, 134 F.3d 831, 834–

35 (7th Cir.1998); *In re A–1 Paving & Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997); *In re Marrs–Winn Co.*, 103 F.3d 584, 589 (7th Cir.1996); *see also* Fed. R. Bankr.P. 8013. Because neither party contests the facts and the issues before us involve questions of statutory and constitutional interpretation, we review the district court's decision *de novo*. DFCS presents two issues. The first issue is whether a bankruptcy court has authority to discharge debts owed to a state after the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71–74, 116 S.Ct. 1114, 1131–32, 134 L.Ed.2d 252 (1996), if the state asserts its Eleventh Amendment immunity. The second issue is whether a debtor's obligation to reimburse DFCS for the costs it incurred providing court-ordered residential treatment of the debtor's delinquent son is a debt to the child of the debtor for the maintenance or support of that child within the scope of § 523(a)(5).

### A. Eleventh Amendment Immunity

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the text of the Amendment appears to restrict only the federal courts' Article III diversity jurisdiction, the Supreme Court has interpreted this Amendment "to stand not so much for what it says, but for the presupposition ... which it confirms." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 688–89, 121 L.Ed.2d 605 (1993). For over a century, the Supreme Court has interpreted the Amendment to deny to the federal courts authority to entertain a suit brought by private parties against a state without its consent. *See Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890).

**1.**

█ DFCS claims that the bankruptcy court has no authority to resolve whether Platter's debt is dischargeable. *See Seminole Tribe,* 517 U.S. at 71–74, 116 S.Ct. at 1131–32. Although DFCS did not assert its Eleventh Amendment immunity in the courts below, the Eleventh Amendment is sufficiently jurisdictional that a state may raise it at any time. *See Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). Thus, even though DFCS asserts Eleventh Amendment immunity for the first time on appeal, we will consider it.

█ To succeed, DFCS must establish 1) that it is an agency of the state; 2) that the Eleventh Amendment applies; 3) that Congress has no authority to abrogate its Eleventh Amendment immunity under the Bankruptcy Code; and 4) that DFCS has not waived this immunity. As one might predict, the parties disagree on the second element, whether the Eleventh Amendment applies. Platter contends that the Eleventh Amendment does not apply because DFCS initiated this adversary proceeding. DFCS contends that Platter initiated the case by filing for bankruptcy and argues that it did not waive its Eleventh Amendment immunity by participating in this action because the Indiana Attorney General is not authorized to waive that defense.[1]

**2.**

█ To decide whether Platter or DFCS has properly framed the question, we must identify the implications of initiating an adversary proceeding in a bankruptcy case. If this act is similar to filing compulsory counterclaims after being sued in federal court, then the Eleventh Amendment applies and DFCS has not waived its immunity. *See supra* n. 1. However, if starting an adversary proceeding is analogous to filing a claim in a previously initiated property dispute, then

the Eleventh Amendment does not apply and any waiver argument is irrelevant. Because a state voluntarily chooses to enter a bankruptcy case when it initiates an adversary proceeding, we hold that a state removes itself from the Eleventh Amendment's protection by starting one. *See Department of Transp. & Development v. PNL Asset Management Co. (In re Estate of Fernandez),* 123 F.3d 241, 245 (5th Cir.1997) ("We do not doubt that after *Seminole Tribe,* a State may voluntarily choose to participate in a bankruptcy proceeding and [forego] its Eleventh Amendment sovereign immunity. But this remains a choice to be made by the State.").

The Supreme Court addressed the effect of filing a claim in a bankruptcy proceeding on a state's sovereign immunity defense in *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). In that case, New Jersey filed a proof of claim for unpaid taxes against the debtor. *See id.* at 570, 67 S.Ct. at 470. After receiving objections from other creditors about the claim, the trustee petitioned the bankruptcy court to adjudicate the conflicting claims. *See id.* at 571–73, 67 S.Ct. at 470–72. New Jersey objected to the trustee's petition, arguing that it constituted an impermissible suit against it. *See id.* at 573, 67 S.Ct. at 471–72.

█ The Supreme Court held that no sovereign immunity problem existed where the state filed the claim and where no one sought money from the state, reasoning that "[i]t is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Id.* at 573, 67 S.Ct. at 472. Thus, when a state becomes an actor and files a claim against the bankruptcy res, it steps outside the bounds of Eleventh Amendment protection. *See id.* at 574, 67 S.Ct. at 472; *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883).

---

1. Under the Indiana Constitution, the state legislature must pass a general law specifically waiving Eleventh Amendment immunity to constitute a waiver. *See* Ind. Const. art. IV, § 24. This provision covers a situation where Indiana's Attorney General appears in a federal forum. *See Ford Motor Co. v. Department of Treasury of Ind.,*

323 U.S. 459, 469, 65 S.Ct. 347, 353, 89 L.Ed. 389 (1945). Thus, because the Indiana General Assembly has not expressly waived its Eleventh Amendment immunity for bankruptcy actions, DFCS claims that it could not waive that immunity by appearing in this bankruptcy proceeding.

The situation in *Gardner* is highly analogous to the situation today. The Eleventh Amendment applies only to suits "commenced or prosecuted *against* one of the United States." U.S. Const. amend. XI (emphasis added). DFCS commenced a suit when it filed a complaint in the bankruptcy court against Platter on July 29, 1996, asserting its claim that its debt was nondischargeable under 11 U.S.C. § 523(a)(5). *See Gardner*, 329 U.S. at 574, 67 S.Ct. at 472; *see also* Fed. R. Bankr.P. 7001(6), 7003, 9002(1). When a state chooses to avail itself of the bankruptcy court as a plaintiff, the Eleventh Amendment does not apply and the state will receive the same treatment as other parties. *See Missouri v. Fiske*, 290 U.S. 18, 28, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933). The Eleventh Amendment does not prevent a state from entering a federal forum voluntarily to pursue its own interest. *See Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140, 1148 (4th Cir.1997). However, if a state embarks down this route, it cannot run back to seek Eleventh Amendment protection when it does not like the result.

We recognize that a state is left with a difficult choice when challenging the dischargeability of its debts since Congress has exercised its power to make federal courts the exclusive venue for bankruptcy law. A state may elect not to appear in federal court and accept the consequence of "foregoing any challenge to the federal court's actions." *Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 787 (4th Cir.1997). Or "[i]f a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy [Code] would be frustrated." *New York v. Irving Trust Co.*, 288 U.S. 329, 333, 53 S.Ct. 389, 391, 77 L.Ed. 815 (1933). Yet, contrary to DFCS's assertions, the imposition of this decision by Congress on the states "does not amount to the exercise of federal judicial power to hale a state into federal court against its will and in violation of the Eleventh Amendment." *Antonelli*, 123 F.3d at 787. We therefore deny DFCS's claim that

the bankruptcy court did not have authority to discharge the debt.

### B. Dischargeability Under 11 U.S.C. § 523(a)(5)

Generally, a bankruptcy order discharges the debts of an individual debtor. *See* 11 U.S.C. § 727(a), (b). The Bankruptcy Code, however, has excepted certain types of debts from discharge. *See* 11 U.S.C. § 523. These exceptions are confined to those plainly expressed in the Code, *see In re Saafir*, 192 B.R. 964, 966 (Bankr.D.Neb.1996), and are narrowly construed in favor of the debtor, *see Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); 3 Lawrence P. King, Collier on Bankruptcy para. 523.05 (15th rev. ed.1995). Thus, we will construe narrowly the language making debts owed "to a spouse, former spouse, or child of the debtor" for child care nondischargeable to assure the debtor has an opportunity for a fresh start. *See County of Oakland v. Fralick*, 215 B.R. 132, 134 (W.D.Mich.1997).

11 U.S.C. § 523(a)(5) provides as follows:

Section 523. Exceptions to Discharge

(a) A discharge under 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or sup-

port, unless such liability is actually in the nature of alimony, maintenance, or support;

In order to establish whether a debt related to a minor child is dischargeable under § 523(a)(5), a court must determine 1) whether the obligation is a debt to the child or validly assigned by the child to a governmental entity and 2) whether the obligation is one of support.

### 1.

■ DFCS contends that Platter's obligation to reimburse it for supporting her minor child constitutes nondischargeable court-ordered support. Platter argues that this debt is not excepted under § 523(a)(5) because the debt is not owed to her child. Both parties agree that the child did not assign the debt to DFCS. See 11 U.S.C. § 523(a)(5)(A). They differ on whether § 523(a)(5) allows DFCS as a third party to collect its debt because it provided the support that Platter owes her son.

The debt Platter owes DFCS is statutorily based. DFCS seeks reimbursement from Platter under Ind.Code § 31–6–4–18(b),[2] which states that "the parent . . . of a child adjudicated a delinquent child or a child in need of services is financially responsible for any services ordered by the court. . . ." *Id.* This provision does not require payment to the child or to DFCS on behalf of the child. *See id.* According to the statute, Platter owes her debt to DFCS. The bankruptcy provision in question, § 523(a)(5), requires that the debtor owe a "spouse, former spouse, or child" for the debt to be nondischargeable.

■ " 'Our task is to apply the text, not to improve upon it.' " *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 538, 114 S.Ct. 1023, 1035, 127 L.Ed.2d 455 (1994) (Thomas, J., concurring) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 126, 110 S.Ct. 456, 459–60, 107 L.Ed.2d 438 (1989)). Even though we agree that Platter owes her son support, Trevor is not seeking assistance. Thus, we do not see how § 523(a)(5) is impli-

cated. DFCS is simply trying to enforce its rights against a parent under a state statute for reimbursement. We cannot turn a blind eye to the plain language of § 523(a)(5) in an equitably motivated effort to allow DFCS to defray its costs. Hence, we reject DFCS's contention that its debt is nondischargeable.

The fact that Congress has amended § 523(a)(5) to provide a means for third party government entities to recover this type of cost bolsters our decision to deny DFCS's claim in this case. In 1984, Congress amended § 523(a)(5) in response to a split in authority regarding whether support debts assigned by a debtor's family member to a government entity were dischargeable. The amendment specifically provided that such debts were nondischargeable. *See* Pub.L. 98–353 § 454(b)(2), 98 Stat. 375 (1984); *see also In re Visness,* 57 F.3d 775, 780 (9th Cir.1995).

This amendment, however, did not enlarge § 523(a)(5) sufficiently to encompass every debt owed to a governmental entity for support of a "spouse, former spouse, or child." The amendment only addressed debts determined by a court to be owed to a spouse or child of the debtor which a family member of the debtor then assigned to a governmental agency. *See* Pub.L. 98–353 § 454(b)(2), 98 Stat. 375; *see also County of El Dorado v. Crouch (In re Crouch),* 199 B.R. 690 (9th Cir.BAP 1996). The plain meaning of § 523(a)(5) does not cover the present situation, where the debtor owes a governmental agency directly for the support of the debtor's child. *See County of Oakland,* 215 B.R. at 134 (concluding that obligation contained in a juvenile court's order of reimbursement is dischargeable); *Saafir,* 192 B.R. at 969 (holding that obligation imposed under reimbursement statute is dischargeable); *In re Spencer,* 182 B.R. 263, 267–68 (Bankr. E.D.Cal.1995) (same); *In re Erfourth,* 126 B.R. 736, 740–41 (Bankr.W.D.Mich.1991) (same).

Finally, even if we agreed with DFCS that § 523(a)(5) is ambiguous and turned to legis-

---

**2.** In 1997, the Indiana legislature repealed this provision and replaced it with Ind.Code § 31–40–1–2. Like § 31–6–4–18(b), § 31–40–1–2 re-

quires a child's parent to reimburse a provider for services ordered by the juvenile court.

lative history, § 523(a)(5)'s legislative history does not support DFCS's position. A committee report at the time of § 523(a)(5)'s passage explained that:

> Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language ... will apply to make nondischargeable only alimony, maintenance, or support *owed directly* to a spouse or dependent.

H.R. No. 95–595, 95th Cong., 1st Sess. 364 (1978) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6320. Thus, neither the plain language of the statute nor the relevant legislative history provides DFCS with a peg on which to hang its argument.

■ Section 523(a)(5) is a carefully drafted statute that creates a narrow exception for some kinds of child support. Section 523(a)(5) does not except from discharge every obligation that falls under the rubric of child support. DFCS's debt is one of those obligations that may generally be described as child support but that does not fall within this narrow exception.

### 2.

Against both the language and legislative history of § 523(a)(5), DFCS argues that we are bound by our precedent to hold that its debt is nondischargeable. *See In re Seibert*, 914 F.2d 102 (7th Cir.1990). In *Seibert*, we were asked to decide whether the expenses surrounding "pregnancy and confinement" were a debt owed to a child for the child's support or if they were a debt owed to the child's mother. *See id.* at 105. If the debt were owed only to the child's mother, the father-debtor would have been able to discharge the debt since the mother was neither his spouse nor his former spouse. But if the debt were owed to both mother and child, then the debt would satisfy the nondischargeability requirements of § 523(a)(5). In an effort to avoid placing an unmarried father in a better position than a married father with respect to dischargeability, we concluded that these medical services, although performed upon the mother, directly benefitted the child as well. *See id.* at 106.

Contrary to DFCS's suggestion, however, our decision in *Seibert* does not provide unqualified support for the proposition that any debt owed to a third party that can be characterized as supporting a child is nondischargeable under § 523(a)(5). In *Seibert*, we never suggested that a service provider—like the hospital in *Seibert* or the DFCS in this case—could use § 523(a)(5) to collect a debt owed to it. *See* 914 F.2d at 106–07. Rather, we evaluated whether the medical expenses incurred for pregnancy and hospital confinement were in the nature of *support* for both the mother and child. *See id.* at 105. The question at issue here, whether a court may interpret "*to* a spouse, former spouse, or child" broadly to allow third parties to collect, was not at issue in *Seibert*. Thus, it does not control our analysis today.

### 3.

DFCS also contends that the debt cannot be discharged if we wish to remain consistent with courts that have held that attorney's fees in child support cases are nondischargeable. *See, e.g., Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir.1997); *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983); *In re Spong*, 661 F.2d 6, 10 (2d Cir.1981). These cases deny discharge for attorney's fees incurred in obtaining child support payments because these courts assimilate the debt owed the attorney with a debt owed "to a spouse, former spouse, or child of the debtor." *See Spong*, 661 F.2d at 8–9. The theory connecting the attorney and the statutorily provided recipients is that a child's expenses of collection are part of the underlying obligation to support one's child or spouse. Because the ultimate purpose of such a proceeding is to provide support for the child, the attorney's fees incurred inure to the child's support and therefore satisfy § 523(a)(5). *See, e.g., Hudson*, 107 F.3d at 357. These cases, however, do not aid DFCS because we have previously held that the ability of third parties to recover for aiding in the collection of child or spouse support is not unlimited. *See In re Rios*, 901 F.2d 71, 72 (7th Cir.1990).

In *Rios,* an attorney attempted to recover the costs of representing a debtor, Rios, who

was seeking child support. The attorney in that case conceded that Rios had no legal obligation to pursue a support order. *See id.* at 72. Rios was simply seeking financial relief in meeting her own support burden. We determined that Rios's contract with her attorney did not generate a debt to her child. *See id.* Thus, her obligation to her attorney was not in the nature of child support. *See id.*

For the same reasons that we refused to extend the collection theory in *Rios,* we cannot stretch the collection theory to include the recovery by a government agency of its costs incurred in providing services to a debtor's child. The underlying obligation in this case is Indiana's statutory requirement that the parent reimburse DFCS for its expenses. *See* Ind.Code § 31–6–4–18(b). Like the contract in *Rios,* this reimbursement requirement does not generate a debt to the child. Also, the ultimate purpose of this proceeding is not to provide the debtor's child with support; it is to provide DFCS with reimbursement for its efforts. Together, these distinctions explain why DFCS's debt is different from attorney's fees. Platter's debt to DFCS is not owed "to a spouse, former spouse or child of the debtor" and is dischargeable in bankruptcy.

### 4.

■ Finally, DFCS argues that discharging this debt places form over substance by ignoring the fact that it supported Platter's child for 25 months. To effectuate its interpretation, DFCS suggests that we should look only to whether it provided child support and ignore the fact that it is not a spouse, former spouse, or child. *See In re Canganelli,* 132 B.R. 369, 389–90 (Bankr. N.D.Ind.1991); *In re Burton,* 132 B.R. 575, 584 (Bankr.N.D.Ind.1988). While we agree that "dischargeability must be determined by the substance of the liability rather than its form," *see Spong,* 661 F.2d at 9, we do not believe that the substance of Platter's liability satisfies § 523(a)(5); thus, we wholeheartedly reject its invitation to ignore provisions of the Bankruptcy Code.

■ The unquestionable purpose of § 523(a)(5) is to ensure that spouses, former spouses, and children receive support even though a support provider has declared bankruptcy. *See* 11 U.S.C. § 523(a)(5). DFCS's claim is only against Platter; if it is unsatisfied, DFCS cannot take action against Platter's child. Platter's discharge in bankruptcy will impact DFCS, not her child. Excluding this debt from discharge, therefore, will neither protect spouses, former spouses, or children from being injured by a debtor's discharge nor will it further the bankruptcy goal of a fresh start for the debtor. To allow DFCS to recover its debt without entering the creditors' queue is counter to the Bankruptcy Code's general purpose and § 523(a)(5)'s specific purpose. *See Erfourth,* 126 B.R. at 740–41 (reasoning that without a valid assignment to a county, a debt not owed directly to the child is merely a dischargeable third party debt).

Moreover, while this result may seem inequitable given the state's support of Platter's son, "the strictures of § 523(a)(5) and state law dictate such a result." *Erfourth,* 126 B.R. at 741. If government entities like DFCS do not wish to be left providing room and board to juvenile delinquents without a means of collecting against bankrupt parents, then they may lobby Congress for another amendment to § 523(a)(5) or the Indiana legislature for a revision of Ind.Code § 31–40–1–2(c) (the current version of the reimbursement provision). If we accepted DFCS's invitation to disregard § 523(a)(5) as it currently exists, we would be usurping the authority of these elected bodies through an act of judicial legislation as well as ignoring the plain meaning of the statute. This we cannot do.

For the above reasons, we AFFIRM the judgment of the district court.