751 N.E.2d 293 (2001)
In the Matter of M.L.K. (dob 12/10/81) A Child Alleged to be a Child in Need of Services,
Vicki Kipp and Kelly Kipp, Appellants-Respondents,
v.
Wells County Department of Family and Children, Appellee-Petitioner.
No. 90A02-0102-JV-115.
Court of Appeals of Indiana.
June 20, 2001.
*295 Thomas C. Allen, Fort Wayne, IN, Attorney for Appellants.
Thomas M. Hakes, Huntington, IN, Attorney for Appellee.

*294 OPINION
KIRSCH, Judge.
Vicki and Kelly Kipp appeal the portion of the trial court's decision that terminates the wardship of their daughter, M.L.K., and orders them to reimburse the Wells County Office of Family and Children (OFC) over $21,000 in costs expended in her care, raising the following issues for review:
I. Whether their due process rights were violated because the notice of the wardship termination hearing did not specify that the subject of reimbursement would be litigated.
II. Whether the trial court erred in including a statement in the judgment that it was nondischargeable in bankruptcy.
III. Whether the trial court erred in ordering the Kipps to reimburse the OFC without finding that they were able to do so.
We reverse and remand.

FACTS AND PROCEDURAL HISTORY
M.L.K. was born on December 10, 1981. In 1997, M.L.K. became the subject of a CHINS petition and was made a ward of the OFC. On July 6, 2000, the OFC filed a motion to Dismiss Proceedings and Terminate Wardship based on M.L.K.'s marriage.
On August 16, 2000, the trial court held a hearing on the motion, including the Kipps' obligation to reimburse the OFC for the amounts it had expended on M.L.K.'s behalf during her wardship. The trial court entered an order terminating the wardship, directing the Kipps to reimburse the OFC for $21,777.44, and determining that the debt was in the nature of support and maintenance and therefore nondischargeable in bankruptcy. The Kipps now appeal.

DISCUSSION AND DECISION
The Kipps first argue that their due process rights were violated because the notice of the wardship termination hearing that they received did not state that the subject of reimbursement of the OFC's expenses would be litigated. Due process requires notice, an opportunity to *296 be heard, and an opportunity to confront witnesses. Turner v. Board of Aviation Comm'rs, 743 N.E.2d 1153, 1169 (Ind.Ct. App.2001). Before an action affecting a party's interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment proceeds, the State, at a minimum, must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Yoder v. Elkhart County Auditor, 632 N.E.2d 369, 372 (Ind.Ct.App.1994) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Such notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met. Id. Whether notice is reasonable depends on the balance struck between the State interest involved and the constitutionally protected individual interest involved. Id. It is the State's responsibility to strike the proper balance between these conflicting interests. Id.
The OFC argues that because the statute directs the trial court to consider the issue of reimbursement at any hearing, the Kipps were on notice that the issue of reimbursement would be litigated. IC XX-XX-X-X provides:
"(a) A parent or guardian of the estate of a child adjudicated a delinquent child or a child in need of services is financially responsible as provided in this chapter (or IC XX-X-X-XX(e) before its repeal) for any services ordered by the court.
...
(c) At:
(1) a detention hearing;
(2) a hearing that is held after the payment of costs by a county under section 2 of this chapter (or IC XX-X-X-XX(b) before its repeal);
(3) the dispositional hearing; or
(4) any other hearing to consider modification of a dispositional decree;
the juvenile court shall order the child's parents or the guardian of the child's estate to pay for, or reimburse the county for the cost of, services provided to the child or the parent or guardian unless the court finds that the parent or guardian is unable to pay or that justice would not be served by ordering payment from the parent or guardian."
Although the statute provides for a reimbursement determination at any hearing, we agree with the Kipps that due process requires they receive notice that reimbursement would be litigated at this hearing. The Kipps received notice that the trial court would hold a hearing regarding the OFC's request to terminate the wardship of M.L.K. The apparent reason for the termination was M.L.K.'s emancipation by marriage. Thus, the resolution of the wardship issue had little real impact on the Kipps' rights or obligations. Under the circumstances, the notice of the wardship hearing would not give a reasonable person actual notice that the issue of reimbursement of expenses would be litigated at the hearing. We have written:
"A party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order. This is especially true where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair. A party should be given an opportunity to meet the issues which the court is considering."
*297 Aldon Builders, Inc. v. Kurland, 152 Ind. App. 570, 580, 284 N.E.2d 826, 832 (1972). Accord Bahre v. Metro. Sch. Dist. of Washington Township, Marion County, 400 N.E.2d 197, 200 (Ind.Ct.App.1980). Accordingly, we hold that the Kipps are entitled to reversal of the trial court's decision against them on this basis. We further note that in other cases in which the county has sought reimbursement, the OFC in question has filed a petition specific to this issue. We believe that this is the preferable procedure and recommend it to the OFC in the future. See, e.g., In re the Matter of C.K., 695 N.E.2d 601 (Ind.Ct. App.1998), trans. denied; In re the Matter of J.W. v. Hendricks County Office of Family & Children, 697 N.E.2d 480 (Ind. Ct.App.1998). Although this issue is dispositive of this appeal, we address the Kipps' other issues because they are likely to recur on remand.
The Kipps next maintain that the trial court erred in including within its order a statement that the judgment against the Kipps was in the nature of support and therefore nondischargeable in bankruptcy. Federal law governs what constitutes a nondischargeable "maintenance or support" obligation. Cowart v. White, 711 N.E.2d 523, 528 (Ind.1999). State courts nonetheless have concurrent jurisdiction to make that determination. Id.
11 USCA § 523(a)(5) states:
"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
...
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]"
Some federal courts have interpreted this provision as also rendering nondischargeable child support obligations owed to governmental entities for the care that the agencies provided to the children. See, e.g., In re Canganelli, 132 B.R. 369 (Bankr.N.D.Ind.1991); In re Burton, 132 B.R. 575 (Bankr.N.D.Ind.1988). These courts reasoned that although the child support obligation was not paid to the child, it was owed to the child. Therefore, section (a)(5) applied and the debt was nondischargeable. However, the United States Court of Appeals for the Seventh Circuit subsequently decided this issue to the contrary. In In re Platter, 140 F.3d 676 (7th Cir.1998), the Dekalb County Division of Family and Children Services ("DFCS") claimed that Platter's debt for the support of her delinquent child at a residential treatment facility was not dischargeable in bankruptcy. The court examined the statute and noted that the language providing for exceptions from discharge must be construed narrowly "to assure the debtor has an opportunity for a fresh start." Id. at 680. The court noted *298 that under the reimbursement statute, Platter owed her debt to the DFCS directly. It therefore concluded that the exception did not apply and stated "[w]e cannot turn a blind eye to the plain language of § 523(a)(5) in an equitably motivated effort to allow DFCS to defray its costs." While commenting that the result was inequitable, it suggested that "[i]f government entities like DFCS do not wish to be left providing room and board to juvenile delinquents without a means of collecting against bankrupt parents, then they may lobby Congress for another amendment to § 523(a)(5) or the Indiana legislature for a revision of [the reimbursement statute]." Id. at 683.
We find the reasoning of the Seventh Circuit in Platter persuasive, and we conclude that any obligation owed by the Kipps to the OFC under the current statutory framework is dischargeable in bankruptcy.
Finally, the Kipps allege that the trial court erred in ordering them to reimburse the OFC for the costs of caring for M.L.K. without first establishing that they were able to pay those amounts. A delinquent child's parents are financially responsible for any services ordered by the court and must reimburse the county unless the court determines that they are unable to pay for them, payment would be an unreasonable hardship on the family, or justice would not be served. Matter of Garrett, 631 N.E.2d 11, 13 (Ind.Ct.App. 1994), trans. denied. On the other hand, the right to reimbursement is not unlimited, and the juvenile court must comply with the statute. Washburn v. Tippecanoe County Office of Family & Children, 726 N.E.2d 361, 364 n. 3 (Ind.Ct.App.2000).
In C.K., 695 N.E.2d at 601, this court examined the reimbursement provision. In that case, C.K.'s father appealed the trial court's order that he reimburse the county for $52,276, the costs of C.K.'s out-of-home placement in various facilities after he was adjudged to be delinquent. After reviewing the statute and concluding that "the OFC clearly has the right to seek reimbursement by the child's parents for the costs of any services provided to the delinquent child," id. at 605, we noted that the OFC's right to do so is not unlimited, and the trial court must comply with the statute's requirements. Because there was no evidence in the record that the trial court inquired into C.K.'s parents' ability to pay $52,276 or whether such an order would serve the interests of justice, we reversed the trial court's order and remanded the matter for reconsideration. In doing so, we noted that "[s]ound public policy dictates that the court consider the factors laid out in [the statute] and state its findings thereon before placing such a large financial burden on a delinquent child's parents." Id. at 605.
By contrast, in J.W., 697 N.E.2d at 480, a panel of this court held that the inability to pay was an affirmative defense. Accordingly, the party alleging an inability to pay has the burden of raising the defense and proving it by a preponderance of the evidence. Id. at 482. The panel's decision drew a dissent from Judge Riley, however, who also cited public policy reasons and would have remanded to the trial court for a hearing on the parents' ability to pay reimbursement. Id. at 484 (Riley, J., dissenting). The J.W. majority recognized such public policy concerns, but believed that "sound public policy also demands that the burden of presenting evidence on these two exceptions properly remains with the party seeking to avoid the reimbursement obligation." Id. at 482 n. 4.
While we recognize the logic behind this court's opinion in J.W., we believe that the approach adopted in C.K. is more consistent with the legislative purpose in including *299 the ability to pay inquiry in the statute. The importance of an inquiry into the ability to pay is highlighted here, where the trial court heard absolutely no evidence regarding the Kipps' income, assets, or financial status beyond their history of payment of the weekly court-ordered support. Thus, the trial court had no basis for determining whether the Kipps were financially able to pay the judgment.
Accordingly, we reverse the trial court's order and remand this matter to the trial court for proceedings consistent with this opinion.
SHARPNACK, C.J., and MATTINGLY-MAY, J., concur.