ESTATE of Jennifer A.
MAYER, Plaintiff,

v.

Dianne Marie HAWE, Defendant.

No. 03C0844.

United States District Court,
E.D. Wisconsin.

Dec. 23, 2003.

Thomas J. Janssen, Appleton, WI, for Plaintiff or Petitioner.

Harvey G. Samson, Appleton, WI, for Defendant or Respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

Pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001(a), debtor Dianne Marie Hawe, formerly Dianne Mayer ("Dianne"), appeals an order of the bankruptcy court granting summary judgment to the Estate of Jennifer A. Mayer ("the estate") and denying her own motion for summary judgment. She argues that the bankruptcy court erred in determining that her obligation to pay attorneys' fees and costs pursuant to the order of a state probate court in connection with litigation she brought against the estate was a debt for "support" pursuant to 11 U.S.C. § 523(a)(5) and therefore not dischargeable in bankruptcy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James W. Mayer ("James") is Dianne's former spouse, and Jennifer A. Mayer ("Jennifer") is the couple's twenty-two year old developmentally disabled daughter. In 1998, James and Dianne each asked the Outagamie County Probate Court to appoint them as Jennifer's guardian, and the court appointed James. Subsequently, Dianne initiated various legal proceedings against the estate seeking to remove James as guardian and to clarify the terms of the guardianship. In order to defend these actions, James was required to retain counsel for the estate and for Jennifer, and the court had to appoint a guardian ad litem. Thus, significant legal fees and costs were incurred.

On July 10, 2001, the probate court ordered Dianne to pay a portion of these fees and costs including: (1) $2,720.50 in fees and $588.65 in costs for James's attorney; (2) $570.00 in fees for the guardian ad litem; and (3) $5,263.50 in fees, $208.05 in transcript costs and $1,600.00 in evaluation expenses to Jennifer's attorney. In addition, the court stayed all proceedings concerning the guardianship and prohibited Dianne from filing further actions relating thereto until she paid the above fees and costs.

The probate court found that the fees "were necessary in order to respond to the petition filed by Ms. Hawe." (Debtor's App. at 133.) It stated that some of Dianne's filings were "unreasonable," resulted in the "inefficient and wasteful use of limited judicial resources," and caused "the Ward and Guardian to incur unnecessary and repeated expenses and attorney fees, serving no apparent legitimate purpose." (*Id.* at 134.) The award was the "best means to avoid the economic, emotional and other harm and prejudice, which results from Ms. Hawe's actions." (*Id.*)

In June 2002, Dianne filed a Chapter 7 bankruptcy petition and sought to discharge her obligation to pay the above fees and costs. The estate objected, arguing that the debts were nondischargeable. The bankruptcy court agreed with the estate and granted its motion for summary judgment and denied Dianne's cross motion.

In an oral decision, the court stated that the facts were "undisputed. No issues of material fact have been raised." (*Id.* at 177.) It then stated that the question of dischargeability turned on whether Dianne's obligations "fit within the definition of support," and that to determine what constitutes support, it had to look "at the intent of the ... probate court." (*Id.* at 181.) The court concluded that Dianne's debts were "support type obligations" because they were "connected with the welfare of the ward. And therefore, they have to do with support." (*Id.* at 181–82.) Thus, Dianne's debt was nondischargeable.

## II. STANDARD OF REVIEW

The granting of summary judgment in a bankruptcy proceeding involves the resolution of a legal issue; hence, my review is de novo. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir.1999). A motion for summary judgment may be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003). In determining whether the bankruptcy court's decision with respect to the parties' summary judgment motions was correct, I construe all evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257–58, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). I assess each party's motion independently, *see Santaella v. Metro. Life*

*Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997), but in the present case, I need only assess Dianne's motion because it is dispositive. Therefore, I construe all evidence in the light most favorable to the estate.

## III. DISCUSSION

Pursuant to § 523(a)(5), certain debts are nondischargeable in bankruptcy, including a debt "to a spouse, former spouse or child of the debtor, for ... support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record." The party claiming nondischargeability must establish it by a preponderance of the evidence. *Matter of Crosswhite*, 148 F.3d 879, 881 (7th Cir.1998). To further the policy of giving a debtor a fresh start, exemptions to discharge are normally construed strictly against the creditor; however, to protect a debtor's spouse and children, § 523(a)(5) is construed more liberally than the other exemptions. *Id.* at 881–82. To ensure that similarly situated debtors are treated uniformly, federal bankruptcy law determines whether a debt constitutes support. *In re Reines*, 142 F.3d 970, 972 (7th Cir.1998); *Matter of Seibert*, 914 F.2d 102, 106 (7th Cir. 1990). Thus, for bankruptcy purposes, a debt may be classified as support even though it would not qualify as support under state law. *In re Jones*, 9 F.3d 878, 880 (10th Cir.1993); *In re Seixas*, 239 B.R. 398, 403–04 (9th Cir. BAP 1999).

In determining whether a debt constitutes support within the meaning of § 523(a)(5), a court must determine whether the debt was created for the purpose of protecting the debtor's family. *See Matter of Crosswhite*, 148 F.3d at 881 ("Bankruptcy law has had a longstanding policy of protecting a debtor's spouse and children when the debtor's support is required."); *In re Platter*, 140 F.3d 676, 683 (7th Cir.

1998) (stating that "[t]he unquestionable purpose of § 523(a)(5) is to ensure that spouses, former spouses, and children receive support even though a support provider has declared bankruptcy"). Thus, only debts that were created to enforce the debtor's duty to support his or her spouse, former spouse or child are exempted from discharge under § 523(a)(5).[1] If a debt was not created to enforce such duty, exempting the debt from discharge would serve neither the policy underlying § 523(a)(5) nor that of providing the debtor with a fresh start. *See In re Platter,* 140 F.3d at 683 (refusing to exempt debt from discharge in part because doing so would serve neither the policy underlying § 523(a)(5) nor the policy in favor of providing the debtor with a fresh start).

■ Determining whether a debt was created to enforce the debtor's duty to support his or her spouse, former spouse or child requires an inquiry into the intent of the parties or the court that created the debt. This is so because a federal court should not create a support obligation that neither the state court nor the parties intended to create. *See In re Calhoun,* 715 F.2d 1103, 1109 (6th Cir.1983). Further, since *all* obligations to a former spouse or child could be said to function, at least indirectly, as support, only by examining whether an obligation was *intended* to serve as support can a support obligation be distinguished from one that is dischargeable in bankruptcy.

■ Thus, before an obligation can constitute support under § 523(a)(5), the parties or the court that created it must have intended that the debt serve the purpose of support. *See, e.g., In re Reines,* 142 F.3d at 972–73; *Matter of Coil,* 680 F.2d 1170, 1172 (7th Cir.1982); *Matter of Woods,* 561 F.2d 27, 29–30 (7th Cir.1977); *see also In re Werthen,* 329 F.3d 269, 273 (1st Cir.2003) (stating that the critical issue is whether the divorce court intended a particular award to be support); *Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir.2001) (collecting cases holding that intent is the relevant inquiry); *In re Seixas,* 239 B.R. at 404 ("[t]he intent of the parties and the substance of the obligation are the touchstone of the § 523(a)(5) analysis in the Ninth Circuit").

■ To determine intent, courts examine the language of the document creating the obligation and the circumstances surrounding the debt's creation. Such circumstances include the financial situation of the parties and whether the money owed is necessary to provide for the obligee's financial needs. *See, e.g., Matter of Seibert,* 914 F.2d at 105 n. 4; *Matter of Woods,* 561 F.2d at 30; *see also* Comment, *The Dischargeability of Marital Obligations: Three Justifications for the Repeal of § 523(a)(15),* 13 Bank. Dev. J. 135, 141–48 (collecting cases that list factors courts consider when determining whether a debt constitutes support).

■ In the present case, the language of the probate court's order makes clear that the court did not impose attorney's fees and costs on Dianne for the purpose of enforcing her duty to support James and Jennifer. Rather, the order indicates

---

1. "Support" for purposes of § 523(a)(5) is not limited to those obligations that constitute support under state law. *See, e.g., In re Reines,* 142 F.3d at 972. Rather, the debtor's duty to support his or her spouse is a moral duty recognized by society and enforced by state law. Thus, whether a debt is nondischargeable under § 523(a)(5) turns on wheth-

er the debt exists to enforce the state law duty of support, even though the debt would not necessarily be labeled support under state law. *See In re Rodriguez,* 22 B.R. 309, 310 (Bankr.W.D.Wis.1982) (stating that "[t]he determinative question is whether the award was made to discharge the state law duty of support").

that the court's intent was to deter and/or punish Dianne for pursuing litigation that the court considered "unreasonable," "inefficient," "wasteful" and "unnecessary." (Debtor's App. at 134.) The order leaves no doubt that the court regarded Dianne's legal actions as serving "no apparent legitimate purpose," and that it awarded fees and costs to the estate and Jennifer because of the "harm and prejudice" that resulted from such actions. (*Id.*)

The language of the order indicates that the court would have ordered any litigant who behaved as Dianne did to pay the adverse party's legal expenses regardless of that person's relationship to the other parties.[2] The court intended to prevent an overly-aggressive litigant from harassing other parties and to punish the litigant for the harm that the court believed that she had already caused. In sum, the probate court's order had nothing to do with Dianne's duty to support James or Jennifer but was meant to sanction her for initiating improper litigation.[3]

Other circumstances support the conclusion that the probate court did not intend its award to serve as a source of support for James or Jennifer. First, under Wisconsin law, a parent has no duty to support a disabled adult child. Although, as previously discussed, this fact does not automatically prevent Dianne's obligation from qualifying as support under § 523(a)(5), it makes it less likely that the probate court intended its award to constitute support. Second, the fact that probate courts, unlike family courts, do not ordinarily deal with issues relating to support also suggests that the probate court in the present case did not intend to impose a support obligation on Dianne.

Accordingly, for the reasons stated, no reasonable factfinder could conclude that the obligation created by the probate court constitutes support and is, therefore, exempt from discharge under § 523(a)(5).

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that the order of the bankruptcy court is **REVERSED** and **REMANDED** with instructions that the bankruptcy court enter summary judgment in favor of Dianne.

---

**2.** For instance, the subject of the guardianship could have been Dianne's disabled mother instead of her daughter, and the guardian could have been Dianne's sister rather than her former spouse. Obviously, if the probate court ordered Dianne to pay her mother's or her sister's legal expenses, there would be no question that such payments would not have been imposed to enforce Dianne's duty to support them. Thus, the incidental fact that the subject of the guardianship was Dianne's adult daughter and that the guardian was Dianne's former spouse does not transform the award of attorney's fees into support payments.

**3.** Other courts have recognized that awards of attorneys' fees imposed for punitive reasons do not constitute support obligations under § 523(a)(5). *See Matter of Archer*, 277 B.R. 825, 831–32 (Bankr.M.D.Ga.2001) (finding that divorce court's award of attorneys' fees imposed solely as a remedy for the debtor's contempt was not support); *In re Bieluch*, 219 B.R. 14, 20–22 (Bankr.D.Conn.1998) (finding that divorce court's award of attorneys' fees imposed to punish the party who was at fault for the divorce was not support). The estate does not argue that the award is nondischargeable under 11 U.S.C. § 523(a)(6), which provides that debts "for willful or malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable.