848 F.2d 809
 Tod A. BOYERS, Plaintiff-Appellant,
v.
TEXACO REFINING AND MARKETING, INC., a corporation, and
Mobil Oil Corporation, a corporation, Defendants,
Texaco Refining and Marketing, Inc., a corporation,
Defendant-Appellee.
 No. 87-2183.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 28, 1988.
Decided June 9, 1988.
 
 William M. Doty, Chicago, Ill., for plaintiff-appellant.
 Joseph A. Girardi, Sundheim, Stall & Girardi, Chicago, Ill., for defendant-appellee.
 Before BAUER, Chief Judge, CUDAHY and RIPPLE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 The plaintiff, Tod A. Boyers, appeals an order from the district court entering judgment against him for the use and occupancy of a gasoline service station in DuPage County, Illinois. The defendant, Texaco Refining and Marketing, Inc. (Texaco), originally leased the station to Boyers in 1981. Texaco renewed this lease for three more years in April, 1982 and again in February, 1985. Subsequently, Texaco decided to withdraw from the retail marketing of motor fuels in DuPage and other Illinois counties and purported to terminate all franchise agreements in these areas effective April 30, 1986, including leases for service stations. Texaco chose to sell its service stations in DuPage County to Mobil Oil Corporation (Mobil), which offered Boyers a franchise. Boyers refused and instead filed a lawsuit under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. Secs. 2801, et seq., to prevent Texaco from terminating his franchise agreement or, in the alternative, to compel Texaco to offer him a right of first refusal on the service station.
 
 
 2
 Since Texaco's purported termination, Boyers has continued to operate the station under an agreement with Phillips Petroleum Co. (Phillips), as a Phillips dealer, without paying rent to Texaco.[1] Texaco filed a motion in the district court seeking partial summary judgment for damages equal to the rent Boyers was required to pay under the prior lease for Boyers's use and occupancy of the service station. The district court entered judgment for Texaco and certified the order pursuant to rule 54(b) of the Federal Rules of Civil Procedure.[2] We affirm.
 
 
 3
 As a threshold matter, we must decide whether this appeal is properly before us. Both parties argue that we have jurisdiction under 28 U.S.C. Sec. 1291 because the order of the district court from which Boyers appeals is a final order. We agree. Section 1291 provides this court with jurisdiction only to hear appeals from final decisions. Partial summary judgment orders, although only adjudicating some claims, can nevertheless be final. A district court's decision is final and appealable under section 1291 "only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Gulfstream Aerospace Corp. v. Mayacamas Corp., --- U.S. ----, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). The district court's order in this case meets this test. Texaco's claim for damages against Boyers is separate and distinct from Boyers's underlying claim under the PMPA. The district court completely and finally resolved the question of Texaco's entitlement to receive damages for Boyers's use and occupancy of the station and no further litigation on the matter is required. Boyers, in fact, already has made payments under the judgment. We find, therefore, that the district court's order was final and that jurisdiction is proper under section 1291.
 
 
 4
 Boyers argues on appeal that Texaco is not entitled to any damages and that, if it is, the amount ordered by the district court is inappropriate. In granting partial summary judgment for Texaco, the district court relied on Brach v. Amoco Oil Co., 570 F.Supp. 1437 (N.D.Ill.1983), a case similar to the instant action. Brach involved a counterclaim by the defendant, Amoco, to recover possession and damages for Brach's refusal to vacate a service station after his lease had been terminated and not renewed. Brach challenged Amoco's act as a wrongful nonrenewal, violative of the PMPA, and paid only the monthly rent on an expired lease (an amount below Amoco's prevailing rental rate). Id. at 1440. The district court held that Amoco was entitled to recover damages equivalent to full market rent for Brach's use and occupancy because, under Illinois law, Brach was a holdover tenant, liable to the landlord. Id. at 1441. The district court reasoned that if Amoco properly refused to renew Brach's franchise, Brach was liable for damages since the expiration date of the lease; if Amoco improperly terminated the franchise relationship, Brach was still liable for the rent he would have been charged as a franchisee. Id. Thus, the court concluded that regardless of the outcome of Brach's complaint against Amoco, Amoco was entitled to recover damages for Brach's use and occupancy of the premises.
 
 
 5
 The PMPA prohibits termination or nonrenewal of any franchise relationship except under certain enumerated grounds and upon compliance with certain notification requirements. 15 U.S.C. Secs. 2802(a), (b)(1). Brach v. Amoco Oil Co., 677 F.2d 1213, 1216 (7th Cir.1982). Section 2802(b)(2) sets forth grounds for termination and nonrenewal and section 2802(b)(3) provides additional grounds for nonrenewal. Id.
 
 
 6
 In the district court, Boyers argued that Texaco violated section 2802(a)(1) of the PMPA by improperly terminating the franchise agreement. Boyers also claimed that Texaco violated section 2802(b)(2)(E) of the PMPA by terminating the franchise agreement in bad faith and failing to offer him first right of refusal to purchase the station. Under this section, once Texaco decided to withdraw from the market, it was required either to offer to sell its interest to the franchisee (or offer the franchisee a right of first refusal), or Texaco could sell its interest to another person who would offer a franchise to the franchisee on a nondiscriminatory basis. 15 U.S.C. Sec. 2802(b)(2)(E)(iii)(I) and (II). Texaco chose to sell its interest to Mobil who offered Boyers a new lease. Boyers refused.
 
 
 7
 On this basis, the district court correctly concluded that the reasoning of Brach applied to Texaco's claim for damages. Without reaching the merits of Boyers's underlying claim, i.e. whether Texaco acted in good faith or Mobil's offer was nondiscriminatory, it is clear that Boyers owes rent for the use and occupancy of the service station from the time his lease was terminated until it is determined whether he is entitled to remain a franchisee. If Texaco prevails on the merits, it is entitled to damages for the use of the premises. If Boyers prevails because Texaco wrongfully terminated the franchise, Boyers is still liable for the rental value of the premises pursuant to the binding lease covering that period of time.[3]
 
 
 8
 On appeal, Boyers contends for the first time that his cause of action arises under sections 2802(b)(3)(D)(iii)(I) or (II), which relate not to termination of franchises, but rather to the nonrenewal of franchises. This section provides that a failure to renew a franchise may be improper if the franchiser does not sell the premises to the franchisee or offer the franchisee a first right of refusal. Unlike section 2802(b)(2)(E), this section does not grant the franchiser the choice to sell its interest to a third party. Boyers claims that Texaco decided to terminate the franchise as early as January 29, 1985, not October 25, 1985, and that Texaco nevertheless fraudulently induced Boyers to renew his franchise in February, 1985. Boyers contends that this conduct constituted a "constructive nonrenewal" of the franchise agreement, bringing it under the language of section 2802(b)(3)(D) rather than section 2802(b)(2)(E). If section 2802(b)(3)(D) governs, the argument goes, Boyers may prove to be the sole, legitimate owner of the service station as of January, 1985, or at least May 1, 1986, when Texaco should have sold the station to him. If Boyers prevails on this claim, he will not owe Texaco any rent. To award rent now, Boyers concludes, is premature.
 
 
 9
 We decline to rule on this issue; Boyers did not raise it below and it is, therefore, not properly before us on appeal. "It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal," Textile Banking Co., Inc. v. Rentschler, 657 F.2d 844, 853 (7th Cir.1981), except in rare cases involving a "jurisdictional question or if justice demands flexibility." Id. The rule is essential in order " 'that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.' " Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (quoting from Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)). To reverse the district court on grounds not presented to it would undermine the essential function of the district court. This rule is not meant to be harsh, overly formalistic, or to punish careless litigators. Rather, the requirement that parties may raise on appeal only issues which have been presented to the district court maintains the efficiency, fairness, and integrity of the judicial system for all parties.
 
 
 10
 After a thorough search of the record below, we have failed to find any sign of Boyers's "constructive nonrenewal" argument. Boyers points to its reply brief to Texaco's memorandum in support of its motion to compel damages as evidence that this argument was raised. Boyers, however, only argued in that brief that the district court could not determine Texaco's entitlement to damages until it found there was a lawful termination. The district court correctly disagreed and ruled that even if the termination was unlawful, Texaco could recover. (In fact, Boyers conceded in the reply brief that rent was owed to Texaco under the lease.) Now, on appeal, Boyers proceeds a significant step further and claims that, if the termination was unlawful, Texaco should not recover because its fraudulent conduct constituted a "constructive nonrenewal" of Boyers's franchise and, as a result, Texaco had no choice but to offer to sell the premises to Boyers. This theory raises substantial new issues, factual and legal, that were not presented to the district court.[4] The district court, therefore, was deprived of the opportunity to fully consider this novel "constructive nonrenewal" argument and we will not reverse on those grounds.
 
 
 11
 We reach the same result with respect to Boyers's second argument on appeal--that the district court awarded inappropriate damages. The district court awarded Texaco damages based on the amount of money due under the lease. Boyers correctly notes that the burden is on Texaco to establish the correct amount of damages. On appeal, Boyers raises several arguments challenging the appropriateness of equating Texaco's damages with the lease amount, some of which raise factual disputes. Nevertheless, none of these was brought to the attention of the district court. Boyers never disputed the amount of damages in the district court beyond merely asserting that the termination of the franchise was improper. Texaco argued that its damages were equivalent to the rental amount in the lease. Boyers never rebutted this, until now, and the district court, therefore, did not err by accepting Texaco's position.
 
 
 12
 Finally, we note that Boyers's claims do not fall within the jurisdictional or justice exception to this waiver rule. Clearly, Boyers's "constructive nonrenewal" and damages arguments do not relate to jurisdiction. Nor does justice require finding in Boyers's favor. Boyers has continued to run the service station under the Phillips brand on the same premises for over two years--rent free. Boyers, of course, has also not tendered any purchase money to Texaco for the premises. In any case, Boyers's "constructive nonrenewal" argument may remain ripe for determination in his original claim under the PMPA before the district court. If he prevails, he is entitled to damages. At that time, if appropriate, the district court may wish to consider whether Boyers may recover the damages paid to Texaco for the use and occupancy of the premises pending the outcome of the litigation.
 
 
 13
 The judgment of the district court is, therefore,
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Boyers offered to pay rent to Texaco in return for Texaco's recognition of his tenancy. Texaco rejected this offer
 
 
 [2]
 Rule 54(b) states in relevant part:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 [3]
 Although Boyers also seeks an injunction under Sec. 2802(b)(2)(E)(iii)(II) ordering Texaco to sell him the property, that provision gives Texaco the choice to either sell to Boyers or to sell to another franchiser. Texaco took the latter route and sold to Mobil which, in turn, offered a franchise agreement to Boyers, who refused
 
 
 [4]
 Our decision that Boyers has waived his right to raise the "constructive nonrenewal" argument on appeal should not affect his ability to pursue this theory on his main claim if the facts supporting this theory are laid out sufficiently in Boyers's Second Amended Complaint