In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-3142

IN RE: CHRISTOPHER A. TRENTADUE,

*Debtor,*

---

CHRISTOPHER A. TRENTADUE,

*Plaintiff-Appellant,*

*v.*

JULIE GAY,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-CV-388 — **J.P. Stadtmueller**, *Judge.*

---

ARGUED FEBRUARY 11, 2016 — DECIDED SEPTEMBER 14, 2016

---

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Plaintiff and debtor Christopher A. Trentadue and his wife divorced in 2007, and as part of that judgment, Trentadue and his then ex-wife received joint legal custody of the couple's six children. This arrangement

proved unworkable and resulted in protracted litigation over custody and child support. The Wisconsin state court overseeing the litigation determined that Trentadue's conduct resulted in excessive trial time to resolve the case and awarded Trentadue's ex-wife $25,000 in attorney's fees for "overtrial." The state court directed Trentadue to make the payment directly to his ex-wife's attorney, Defendant Julie M. Gay.

Trentadue never paid Gay. Instead, he filed a chapter 13 bankruptcy petition. Gay countered by filing a $25,000 claim for the unpaid overtrial award and classified it as a non-dischargeable, domestic support obligation entitled to priority. Trentadue objected that the obligation was imposed as a punishment and therefore could not be a domestic support obligation, but the bankruptcy court overruled his objection. The district court agreed with the bankruptcy court after Trentadue challenged its ruling. We find no error and affirm the decision of the district court.

## I.   BACKGROUND

This case traces its roots to a May 2010 filing made by Trentadue's ex-wife to modify placement and child support related to one child. The filing ignited a contentious, three-year legal dispute over custody, placement, health insurance, and child support that involved substantial motion practice, requests for contempt findings, engagement of experts, and evidentiary hearings. The Wisconsin state court handling the case provided its oral decision on pending matters in November 2012 and entered its Findings of Fact and Amended Order in May 2013.

It was in this May 2013 order that the state court determined that Trentadue committed "significant over-trial" and ordered that he "contribute $25,000 toward [his ex-wife's] attorney fees." In support of its finding, the state court observed the following: (1) Trentadue "expended a great deal of trial time" pursuing the issue of where to send the children to high school; (2) the experts engaged by Trentadue and a "significant number of witnesses called" on his behalf "undercut his position;" (3) "[h]e raised issues that did not need to be addressed" that "protracted the trial well beyond what was necessary;" and (4) he "raised repeatedly" the same issues to the court. In sum, the court determined "Trentadue's desire to 'win' and control resulted in additional legal fees for [his ex-wife]." The state court directed Trentadue to pay the $25,000 directly to his ex-wife's lawyer, Gay. In the same order, the trial court memorialized its findings with regard to custody, placement, health insurance, and child support, including evaluating each party's ability to pay. Trentadue appealed the ruling to the Wisconsin Court of Appeals.

Meanwhile, in July 2013, Trentadue filed a petition for bankruptcy under Chapter 13. Gay countered by filing a claim for $25,000 and labeled it a priority, non-dischargeable domestic support obligation ("DSO") under 11 U.S.C § 507(a)(1). Trentadue objected to the claim's classification as a DSO and argued it should be considered non-priority and unsecured because the trial court ordered the payment as punishment, not support.

Before the bankruptcy court resolved Trentadue's objection, the Wisconsin Court of Appeals issued its decision in November 2014 in which it affirmed the trial court's order,

including the overtrial award. Trentadue appealed to the Wisconsin Supreme Court, but it declined to hear his case.

In March 2015, the bankruptcy court overruled Trentadue's objection and allowed Gay's claim to be classified as a DSO. The bankruptcy court determined that Trentadue's claim was not a punishment but was instead meant to "compensate for the harm he had done" to the children in the form of an "expensive custody litigation" that would have a negative financial and emotional impact on them. *In re Trentadue*, 527 B.R. 328, 334–35 (Bankr. E.D. Wis. 2015). Trentadue appealed the bankruptcy court's decision to the district court, which affirmed the bankruptcy court's ruling. This appeal followed.

## II.  ANALYSIS

Trentadue advances two arguments as to why we should reject the classification of his $25,000 debt to Gay as a DSO: (1) the overtrial award can never be a DSO because it is not payable to his spouse, former spouse, child, or a caregiver and (2) the overtrial award was intended to be a punishment and not in the nature of support. We address each argument in turn.

### A. Identity of the Payee

Trentadue argues that under 11 U.S.C. § 101(14A), the identity of the payee is relevant to determining whether a debt may be considered a DSO. Trentadue is correct. For a debt to qualify as a DSO, it must satisfy all four requirements under § 101(14A), including the requirement that the debt be "owed to or recoverable by—(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental

unit." Trentadue argues that Gay's debt is dischargeable because it is payable to her, not to Trentadue's spouse, former spouse, child, or caregiver.

However, this issue is not relevant to *this appeal*. Trentadue did not raise this argument before the bankruptcy court or the district court and therefore did not preserve it for appeal. As we have explained:

> It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal, except in rare cases involving a jurisdictional question or if justice demands flexibility. … To reverse the district court on grounds not presented to it would undermine the essential function of the district court.

*Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 811–12 (7th Cir. 1988) (internal quotation marks and citations omitted). We have applied this rule in the bankruptcy context, *In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992), and see no reason why it should not exclude Trentadue's argument from consideration here. Trentadue has not demonstrated that this question is one of jurisdiction or how our application of the rule would impose a grave injustice upon him. This argument was available to him when he objected to Gay's claim, and the statute and law have remained static. Trentadue elected not to pursue this possible avenue of relief. We decline to excuse our requirement and undermine "the efficiency, fairness, and integrity of the judicial system for all parties." *Boyers*, 848 F.2d at 812.

*B. Classification of the Overtrial Award*

We turn now to the argument that was raised before the bankruptcy and district courts—that the overtrial award was

in the nature of punishment and not "support" under § 101(14A).

There is a dispute over the standard we should employ when reviewing the bankruptcy court's classification of Gay's debt. Trentadue contends that we should apply *de novo* review to the "lower courts' *findings* that the state court's *intent* in awarding attorney's fees was not punishment and that attorney's fees for overtrial is in the nature of support." (Appellant Br. 10 (emphasis added).)

Contrary to Trentadue's contention, however, we do not apply *de novo* review to the findings and determinations of intent in the bankruptcy setting, as both are necessarily fact questions. *See In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). Rather, we review such fact findings and determinations for clear error. *Id. De novo* review, on the other hand, is reserved for the district and bankruptcy courts' legal conclusions, which would include decisions regarding the proper construction of a statute, *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994), and whether an attorney can be a DSO payee under § 101(14A) in the first instance.

As we pointed out, Trentadue has failed to preserve this latter argument for appeal. The standard we apply then to the bankruptcy court's classification determination is clear error. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (internal quotation marks omitted).

DSOs are exempt from discharge in bankruptcy, *see* 11 U.S.C. §§ 1328(c)(2), 523(a), and entitled to priority, 11 U.S.C.

§ 507(a)(1)(A).[1] As discussed above, four requirements must be shown for a debt to be considered a DSO under the bankruptcy code. *See* § 101(14A). Only one of those four requirements is at issue here, and it requires that for a debt to be considered a DSO, it must be "in the nature of … support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated." § 101(14A)(B). Every circuit, including ours, that has actually confronted this question has recognized that attorney fee awards can constitute "support" under the bankruptcy code. *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 588 (7th Cir. 2005); *In re Rugiero*, 502 F. App'x 436, 439 (6th Cir. 2012) (collecting cases).

Determining whether an attorney fee award is "in the nature of … support" is a question of federal bankruptcy law, not state law. *In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998). As such, we are "not bound by the labels attached to the obligation" under state law. *Id.* Rather, we employ a functional approach that "look[s] beyond the language of a[n award] to the intent of the parties and to the substance of the obligation." *In re Goin*, 808 F.2d 1391, 1392 (10th Cir. 1987).

---

[1] Congress only recently codified the term "domestic support obligation" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23; however, the "term 'DSO' … was developed from the definition of a nondischargeable debt for alimony, maintenance, and support in former Section 523(a)(5). Accordingly, case law interpreting the former version of Section 523(a)(5) remains relevant and persuasive here." *In re Papi*, 427 B.R. 457, 462 n.5 (Bankr. N.D. Ill. 2010) (citations omitted).

For our purposes here though, we must look to the intent of the state court in rendering its judgment and fee award, as there is no settlement agreement between the parties at issue. *See Cummings v. Cummings*, 244 F.3d 1263, 1266 (11th Cir. 2001) ("[T]he bankruptcy court should have examined the intent of the divorce court before making a determination that no portion of the equitable distribution was in the nature of support."). We analyze the following three factors to determine the intent of a state court imposing a judgment in a family-court setting: "(1) the language and substance of [a judgment] in the context of the surrounding circumstances, using extrinsic evidence if necessary; (2) the parties' financial circumstances at the time of [the judgment]; and (3) the function served by an obligation at the time of [the judgment]." 9D Am. Jur. 2d *Bankruptcy* § 3646 (2016) (citing *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990)).

In our analysis, however, we remember that "exceptions to discharge are to be [construed] strictly against a creditor and liberally in favor of the debtor." *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000) (internal quotation marks omitted). However, the underlying policy of the provision exempting DSOs from discharge "favors enforcement of familial support obligations over a 'fresh start' for the debtor." *In re Miller*, 55 F.3d 1487, 1489 (10th Cir. 1995).

Turning to the first factor, the language from the state court order makes clear that its intent in making the overtrial award was to compensate Trentadue's ex-wife's for "additional legal fees" she incurred as a result of Trentadue's "desire to 'win' and control" the proceedings. As noted earlier, those proceedings involved issues of custody, placement, health insurance, and child support. In ruling on the child

support issue, the state court had before it Trentadue and his ex-wife's gross monthly incomes as well as their employment situations, and therefore, a rough understanding of each party's financial picture.

An inference can be drawn from these facts that the state court's intent in ordering the overtrial award was to ensure its handiwork in determining that the couple's children had adequate financial support was not disturbed by Trentadue's scorched-earth approach to the litigation.

Further supporting this conclusion is that the state court heard testimony regarding the legal fees Trentadue's ex-wife incurred and had before it an affidavit detailing those fees when it made the overtrial award. The affidavit provided that Trentadue's ex-wife incurred $49,575 in legal fees. The $25,000 overtrial award was not untethered to the harm Trentadue wrought upon his wife and children's financial position. Indeed, the state court explicitly stated that it was "satisfied" that $25,000 in fees "represent[ed] approximately half of what the totality of [Trentadue's ex-wife's] legal fees are or will be, and that essentially they were generated because of [Trentadue's] response and handling of this case." *Trentadue v. Trentadue*, No. 2013AP1479, 2014 WL 4999456, at *4 (Wis. Ct. App. Oct. 8, 2014). Calculating the actual cost of the legal fees incurred further demonstrates the restorative nature of the overtrial award and the effort undertaken by the state court to further ensure that Trentadue's children were not harmed by his actions.

Trentadue argues that we should take a narrow view of the reason for why the state court imposed the order. According to Trentadue, the overtrial award was meant purely to punish him, which is evidenced by the court's extensive

discussion of his problematic litigation tactics and behavior that could be characterized as "a classic case of contempt." He also advances the theory that the state court's overtrial order concerned only issues "relating to educational and medical decision-making—not custody." (Appellant Br. 20.)

Trentadue's view of the state court order is far too narrow. When we look at the words of a judgment and order, we look at the *entire* order and construe that judgment as a *whole* to determine the court's intent. To his first point, the fee award is plainly not punitive. After discussing the relative financial positions of the parties, the state court here took into account how much Trentadue's ex-wife's legal fees were and split those fees in half. Such a judicial act has all the hallmarks of a compensatory award meant to put Trentadue's wife and his children in the same place they would have been had Trentadue not pursued his overly litigious course. If the state court award were truly "punitive," it would have imposed a fee separate and unrelated to his wife's legal fees and ordered them paid to the court. *Cf. Lightspeed Media Corp. v. Smith*, No. 15-2440, 2016 WL 3905605, at *6 (7th Cir. July 19, 2016) (explaining that criminal contempt is "punitive" in nature and "meant to vindicate the authority of the court." (internal quotation marks omitted)).

As to his contention that the fee award was ordered only because of his overzealous pursuit of issues related to education and medical decision-making, the order itself undermines this position. The state court found that he "raised issues that did not need to be addressed," which "protracted the trial well beyond what was necessary." Similarly, the court observed that Trentadue "raised repeatedly" the same

issues to the court. The state court did not tie these findings to any specific issue in the litigation, and therefore, we will not read them as limited to the issues of education and medical decision-making. Rather, we read them as general comments about Trentadue's overall approach to this litigation, which, as discussed, involved issues of custody and child support.

Trentadue argues we should rely on *In re Lopez*, 405 B.R. 382 (Bankr. S.D. Fla. 1998) and *Estate of Mayer v. Hawe*, 303 B.R. 375 (E.D. Wis. 2003) for the proposition that an award of attorney's fees in a family-law dispute does not automatically qualify as a DSO. While we do not disagree with this proposition,[2] both cases do little to demonstrate that the bankruptcy court here committed a clear error in finding the fee award here was a DSO. In *Lopez*, the bankruptcy court determined that a state court's order requiring the husband to pay attorney's fees in connection with a dissolution proceeding was not a DSO. In reaching this determination, however, the bankruptcy court observed that the state court order provided the "award of attorney fees and costs in favor of the former Husband is based upon and supported by the bad faith litigation misconduct of the former Wife, and *is not based upon the respective wages or ability of the parties to pay*." *In re Lopez*, 405 B.R. at 385. The *Lopez* court heavily relied on this fact. The state court here, however, provided no such explicit disclaimer with its overtrial award. Instead, it imposed the award of attorney's fees in conjunction with its evaluation of the parties' financial situations.

---

[2] The bankruptcy court did not disagree with this proposition either.

Similarly, *Mayer* is also of no assistance. There, the issue decided in the state court was the possible removal of a guardian and the terms of a guardianship, and the fees imposed on the offending litigant related to the "inefficient and wasteful use of limited judicial resources," which also caused "the Ward and Guardian to incur unnecessary and repeated expenses and attorney fees, serving no apparent legitimate purpose." 303 B.R. at 376 (internal quotation marks omitted). The district court determined the bankruptcy court erred in determining the debt was a DSO because the "probate court's order had nothing to do with" support and "was meant to sanction her for initiating improper litigation" *Id.* at 379. Unlike *Mayer*, the overtrial order here is intertwined with issues related to financial support, including child support and health insurance. As discussed above, the obvious inference that can be drawn from the state court's order is that it was taking a holistic view of the couple's financial position and making sure that its distribution of child support was not undermined by the costly legal tactics employed by Trentadue.

As for the second factor, Trentadue contends that the state court "ignored [Trentadue's] ability to pay." (Appellant Br. 15.) This assertion is simply not borne out by the record. As the bankruptcy court observed, the state court detailed Trentadue and his ex-wife's "comparative economic circumstances." *In re Trentadue*, 527 B.R. 328, 334 (Bankr. E.D. Wis. 2015). That review included a discussion of their gross monthly income, how much child support Trentadue had paid in the past, and the steadiness of each party's employment.

Another element of the state court's order suggesting it took the parties' financial situation into account is that it ordered Trentadue to make the overtrial award payment in one lump sum. While Trentadue contends this fact does not support an inference of support (in fact, he believes it makes the award more punitive in nature), we have a different view. A more plausible inference from the state court's order is that it knew Trentadue and his ex-wife's financial situation, and that his ex-wife may not be able to afford to pay a $50,000 legal bill. So, instead of spreading the costs of the unnecessary fees out over several months like a traditional support payment, the state court imposed the same burden on Trentadue that his ex-wife faced in paying her attorneys for the needless litigation. And, if the bankruptcy court were to have discharged Trentadue's debt, then his ex-wife may still have been responsible for the fee award under a *quantum meruit* theory. *See In re Kline*, 65 F.3d 749, 751 (8th Cir. 1995) (analyzing the same concern).

Finally, we turn to the function of the obligation, which in this case is the overtrial award. Trentadue contends the function of any overtrial award in Wisconsin is to punish the litigant for an "unreasonable approach to litigation." (Appellant Br. 14 (quoting *In re Attorney's Fees in Yu v. Zhang*, 637 N.W.2d 754, 760 (Wis. Ct. App. 2001)). But as Trentadue himself recognizes, the court in *Zhang* explained that the award "furthers two objectives, *providing compensation to the overtrial victim for fees unnecessarily incurred* and deterring unnecessary use of judicial resources." *Id.* (citations omitted) (emphasis added). So, it is not meant to just "punish;" rather, it is intended to be restorative, too. In fact, the *Zhang* opinion does not use the word "punish" once in the opinion, nor does it use the word "punitive."

We need not, however, get bogged down in labels or characterizations regarding how a state law classifies a particular debt, *In re Goin*, 808 F.2d at 1392, and must instead focus on the function intended by the state court in imposing the debt. *See Cummings*, 244 F.3d at 1266. Here, the bankruptcy court determined the following regarding the function of the award:

> [T]his award was directly related to his unnecessarily protracted litigation over the welfare of his children and the detrimental effect of his conduct on them. The purpose was to compensate for the harm he had done, but it was not punishment per se.

*In re Trentadue*, 527 B.R. at 334. Later, the bankruptcy court further expounded upon what it believed to be the harm suffered by the children, stating that "[w]hile the children's mother may be a better provider than the debtor, taking on expensive custody litigation will invariably have an adverse effect [sic] on the children, both financially and emotionally." *Id.* at 335.

There was no error in finding that the state court intended to remedy the financial harm caused by Trentadue's conduct in the litigation, which, as we have repeatedly stated, involved custody and child support issues. Under these circumstances, the fee award is in the nature of support.

Trentadue attempts to circumvent this conclusion by directing us to the Eighth Circuit's decision in *Adams v. Zentz*, 963 F.2d 197 (8th Cir. 1992), where it reversed the district court and approved the bankruptcy court's conclusion that a fee award was not a support obligation because it focused on the mother's conduct toward the father. There, the Eighth

Circuit based its decision on whether the nature of the cus-
tody action at issue focused on the child's health or well-
being, and it determined that it did not. *Id.* at 199–200.

*Zentz* is inapposite. Looking at the order as a whole, the
state court judge was focused almost entirely on the welfare
of Trentadue's children, including issues related to education
and health insurance. And, of course, there was extensive
discussion of the support obligations. While it is true that the
court did discuss Trentadue's inappropriate conduct, it only
did so in the context of justifying the imposition of a restora-
tive award it imposed to compensate for the harm done to
his ex-wife and children's financial position.

Trentadue's reliance on *In re Lowther*, 321 F.3d 946 (10th
Cir. 2011) is also misplaced. There, the Tenth Circuit ob-
served that "unusual circumstances" justified a bankruptcy
court's determination that a fee award warranted discharge.
The debtor in *Lowther* had $893 in monthly income and a
child support obligation of $167 per month. The Tenth Cir-
cuit determined that forcing him to pay the $9,000 fee award
"would essentially negate the support payments awarded by
the state court for at least five years and would clearly affect
her ability to financially support the child." *Id.* at 949.

Trentadue's financial situation here is not so bleak—his
income ranged between six and seven thousand dollars a
month. Further, the bankruptcy court had all the facts con-
cerning Trentadue's financial situation before it and deter-
mined that similar "unusual circumstances" were not pre-
sent. That was not clear error.

Accordingly, we find that the district court did not err in approving the bankruptcy court's determination that the Gay's fee award was a DSO.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.