Thomas M. Lynch,United States Bankruptcy Judge
STATEMENT
The Chapter 13 plan, as amended, proposed by Debtor Gary A. DeKroon awaits *780 confirmation. Pending before the court is the Debtor's objection to Proofs of Claim timely filed by Melissa DeKroon who appears in this case pro se . The court held several hearings on the objections to afford the parties, and in particular Ms. DeKroon who resides out of state, the opportunity to amend their submissions and present their proof regarding the claims and objections. After several of these hearings at which Ms. DeKroon participated by telephone and following which she filed additional submissions, the court scheduled an evidentiary hearing at which the parties could appear and testify. Ms. DeKroon appeared by telephone when this date was set and received a copy of the court's scheduling order. However, she did not appear at the scheduled evidentiary hearing without notice or explanation, neither requesting leave to appear by telephone or informing the court that she could not appear or needed the hearing to be rescheduled, apparently choosing to voluntarily limit her case to her affidavit, written submissions and arguments she presented during her previous telephonic appearances. The Debtor appeared at the evidentiary hearing on June 14, 2017 with his attorney, who informed the court that in the absence of the creditor, his client would stand on the papers submitted and not take the witness stand. Accordingly, this court rules on the record before it.
Ms. DeKroon filed two claims in this case on December 21, 2017. In the first, Claim 2-1, she claims to hold an unsecured pre-petition priority debt owed to her by the Debtor in the amount of $21,500. She alleges this debt is based on a "Domestic Support Obligation which was never mentioned by him or his attny [sic] on the Debtors Petition as required [sic]", checking the box in the form to relate her entire claim to 11 U.S.C. § 507(a)(1)(A) or (B). Ms. DeKroon attached to this claim a copy of a Judgment for Dissolution of Marriage filed on October 12, 2017, in proceedings in the circuit court in DeKalb County, Illinois (the "Dissolution Judgment"). She also filed a second claim to allege an unsecured debt of $7,500, alleging that the Debtor was "ordered to pay this amount towards the cost of my attny [sic] fees incurred through our divorce he filed for." (Claim 3-1.) The $7,500 claim also claims to be a domestic support obligation under 11 U.S.C. s 507(a)(1)(A) or (B). In addition to the Dissolution Judgment, Ms. DeKroon also attached a copy of a Family Court General Order dated November 20, 2017 and purportedly entered in the DeKalb County divorce proceedings (the "General Order").[1]
With regard to the larger claim, Claim 2-1, the Debtor does not challenge the claimed amount, but only its priority status. (ECF No. 27.) He acknowledges that he and Melissa DeKroon were divorced pre-petition and he does not dispute that during the divorce proceedings the circuit court made a finding he dissipated marital assets and ordered him to "pay $21,500 to Melissa for the dissipation claim." (Dissolution Judgment, ¶ 4.) Instead, the Debtor argues that the listed debt is not in the nature of alimony, maintenance or support as provided by 11 U.S.C. § 101(14A), and as such does not qualify for priority treatment under 11 U.S.C. § 507(a)(1)(A). The Debtor opposes the second claim in its entirety, not only objecting to its priority status for the same reasons as for his *781 objection to Claim 2-1, but also to assert that "[i]t is unclear where the alleged $7,500 debt ... actually arises." (ECF No. 28.) Noting that the monetary award listed in the General Order attached to the claim does not identify "a debt Melissa can collect," this objection asks this court to disallow the entire $7,500 claim.
Ms. DeKroon resides in Rhode Island and states that she cannot afford to travel to attend these hearings nor retain counsel to now represent her. The court granted her permission to appear by telephone to participate in several hearings on her claim and the objections, and allowed her to supplement the record with such additional proof as she might have. She supplemented her claims by filing on February 7, 2018, two separate three-page responses to the respective objections, attaching to each another copy of the respective proof of claim and orders from the divorce proceeding. (ECF Nos. 47, 48.) When the parties' subsequent efforts to reach a compromise failed, she and the Debtor received leave to file an additional supplemental responses and statements of facts. Ms. DeKroon did so on March 12, filing a ten-page supplement in further support of her Claim 2-1 (ECF No. 58) and nineteen-page response to the objection to Claim 3-1. (ECF No. 57.) With these she separately filed her Affidavit. (ECF No. 56.) The Debtor also filed a brief supplemental statement at that time. (ECF No. 59.)
The court then set the matter for an evidentiary hearing to be held on June 14, 2018, (ECF No. 86), encouraging (once again) Ms. DeKroon to consult with an attorney. The scheduling order provided that while Ms. DeKroon may appear telephonically, she must appear in person to present oral testimony or examine a witness. The order further allowed her additional time to file further responses to the Debtor's objections and submit additional documentation in support of her claims. (Id. ) By the date of the evidentiary hearing she had not filed anything more. Nor did she appear for the hearing.
My ruling is based upon this evidence, giving it such weight as appears warranted, and taking judicial notice where appropriate of the docket of the case, and considering the argument of the parties at hearing. The following sets forth this court's findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.
Jurisdiction
This court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B) and (O ).
Analysis
1. Legal Standard.
The allowance of claims is governed by section 502 of the Bankruptcy Code, which provides that claims filed in a bankruptcy case are presumed valid. 11 U.S.C. § 502(a). A properly filed proof of claim is prima facie evidence of its validity and amount. Fed. R. Bankr. P. 3001(f). In re Vanhook , 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010). The objector to a claim bears the initial burden of rebutting the presumption of validity. Id. "Once the objector has produced some basis for calling into question [the] allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." Id. (quoting In re O'Malley , 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999). "However, the ultimate burden of persuasion always remains with the claimant to *782 prove entitlement to the claim." Vanhook, supra (quoting In re Watson , 402 B.R. 294, 297 (Bankr. N.D. Ind. 2009) ).
2. Priority Status of Claim 2-1.
It is not disputed that Ms. DeKroon holds a judgment debt for $21,500 arising from the divorce proceedings. At issue is whether this debt may be classified as a "domestic support obligation" and thereby be treated as a priority unsecured claim in the Chapter 13 plan.
Section 507(a) lists ten types of claims entitled to priority treatment in a bankruptcy case. However, "provisions granting priority ... are narrowly construed." In re Olga Coal Co.' 194 B.R. 741, 745 (Bankr. S.D.N.Y. 1996). Section 507(a) provides a first priority to "domestic support obligations" among other classified expenses and claims:
(a) The following expenses and claims have a priority in the following order:
(1) First:
(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition ..., are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person.
11 U.S.C. § 507(a)(1)(A).[2] Section 101(14A) defines "domestic support obligation" to be:
A debt that accrues before on, or after the date of the order for relief...that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is -
(A) Owed to or recoverable by -
(i) A spouse, former spouse, or child of the debtor or such child's parent legal guardian, or responsible relative; ....
(B) In the nature of alimony, maintenance, or support ... of such spouse, former spouse or child of the debtor ... without regard to whether such debt is expressly so designated;
(C) Established or subject to establishment before, on or after the date of the order for relief ... by reason of applicable provision of -
(i) A separation agreement, divorce decree or property settlement agreement;
(ii) An order of a court of record; or ....
(D) Not assigned to a nongovernmental entity;
11 U.S.C. § 101(14A).
There is no dispute that Melissa is the former spouse of the Debtor and that no children were born to the parties, no children were adopted and Melissa was not expecting a child when the circuit court entered its Dissolution Judgment. It is undisputed that the Dissolution Judgment provides that Melissa shall receive monthly maintenance payments in the amount of $547.08 through May 5, 2018 and it is not alleged that the Debtor is in arrears on this obligation.
Nor do the parties contest that Melissa raised a claim of dissipation in the state court based on the sale of their Rhode Island marital residence in August 2016. The state court adjudicated that claim, made findings of fact and entered judgment on October 12, 2017 in its Dissolution *783 Judgment. It found, in pertinent part, that the proceeds from the sale of the Debtor and Melissa's former marital residence in Rhode Island were deposited in the parties' joint checking account, into which Melissa also later deposited a personal injury settlement. The court further found that the Debtor withdrew a total of $43,000 from the account "unbeknownst to Melissa." Granting Melissa's petition for dissolution, the court ordered the Debtor to reimburse Melissa ½ of the dissipated monies, $21,500, within 45 days.
At issue here is whether that judgment debt is "in the nature of alimony, maintenance, or support." 1 U.S.C. § 101(14A)(C). The determination of whether the debt is of that nature is a matter of federal bankruptcy law and not state law, Moy v. Moy (In re Moy) , 2015 WL 1585525 *5, 2015 Bankr. LEXIS 1114 **13-14 (Bankr. N.D. Ill. April 3, 2015), and requires the court to employ a functional approach that "look[s] beyond the language of a[n award] to the intent of the parties and the substance of the obligation.' " In re Trentadue , 837 F.3d 743, 748 (7th Cir. 2016) (quoting In re Goin , 808 F.2d 1391, 1392 (10th Cir. 1987) ). Three factors should be analyzed to determine the intent of the state court when it imposed such a judgment: (1) the language and substance of the judgment in the context of the surrounding circumstances; (2) the parties' financial circumstances at the time; and (3) the function "served by an obligation." Trentadue , 837 F.3d at 749 (quoting 9D Am. Jur. 2d Bankruptcy § 2646 (2016) ). "The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts.' Moy , 2015 WL 1585525 *5, 2015 Bankr. LEXIS 1114 **15 (quoting Anderson v. Walden (In re Walden) , 312 B.R. 187, 190 (Bankr. C.D. Ill. 2004) ).
Turning first to the language of the state court order, it is clear that its intent in providing the $21,500 award was not to furnish Melissa support payments but rather to divide marital property. A separate and distinct section of the Dissolution Judgment, paragraph 6., provides for her support: "it is ordered that Melissa shall be paid statutory maintenance in the amount of $547.08 per month for twelve (12) months by the 5th of each month. The maintenance shall terminate upon the payment of maintenance for May 2018." (Dissolution Judgment ¶ 6.) The four paragraphs that follow then address the marital property and its disposition. Paragraph 10 begins with a lengthy discussion of Melissa's dissipation claim that concludes with findings and the awarding to her the $21,500 (Dissolution Judgment ¶ 10 (part a.) ), followed by provisions for the division of personal property (part b. (reserved for further proceedings) ), the sale and the division of sale proceeds of the marital residence located in DeKalb, Illinois (part c.), the parties' responsibilities for debts (part d.), and property interests in pension, retirement or other accounts (part e.). Further, the Dissolution Judgment characterizes the $21,500 award to be a "reimbursement" of Melissa's interest in dissipated "monies" the couple had owned. It thus appears to this court that the only inference to be drawn from the language of the divorce court's is that the $21,500 award was intended to be a part of the court's division of the marital property.
This inference is further supported when the financial situation is considered. Instead of spreading the $21,500 award over several months like a traditional support order, as the Dissolution Judgment did when it ordered the Debtor to pay $547.08 installments to Melissa (¶ 6), the award found in paragraph 10 is not to be a recurring obligation, but rather an amount *784 that could be paid in a single payment but in any case had to be paid in full within 45 days from the entry of judgment. In making its determination, the state court focused upon events preceding the divorce and did not consider the ongoing needs or financial circumstances of either party, nor otherwise indicate any supportive function for the $21,500 award. Rather, the state court makes it clear that the function of this obligation was restorative, to return to Melissa property dissipated by the Debtor to the extent of her interest in it.
Ms. DeKroon's submissions, including her lengthy affidavit, do not suggest, let alone prove, otherwise. Accordingly, the Debtor's objection to her claim that this debt should be given priority status is sustained, and Claim 2-1 will be allowed as a general unsecured debt in the amount of $21,500.
3. Claim 3-1.
Next, the Debtor objects to Ms. DeKroon's priority unsecured claim for $7,500 and asks that it be disallowed. As described above, Claim 3-1 claims that the Debtor was ordered to pay Melissa $7,500 "towards the cost of my attny fees incurred through our divorce he filed for." (Claim 3-1.) To it she attached a copy of the November 20 General Order as well as the Dissolution Judgment. The Debtor points out that while the General Order contains an award for attorney's fees, its award does not relate to the Debtor's claim. In addition, the Debtor argues that this $7,500 debt claimed here, too, is not a domestic support obligation and does not qualify for priority treatment.
A timely filed claim or interest filed under section 501 of the Bankruptcy Code is deemed allowed unless objected to by a party in interest. 11 U.S.C. § 502(a). The court shall allow a claim objected to after notice and hearing in the amount it shall determine the claim to be as of the petition date, except to the extent, in part, such claim is unenforceable under applicable law (other than because it is contingent or unmatured) or "if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services." 11 U.S.C. § 502(a), (b)(1), (4). Under Bankruptcy Rule 3001"[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). To comply with the rules and receive the presumption the creditor must timely file a proof in writing and signed by the creditor that sets forth her claim. Fed. R. Bankr. P. 3001(a), (b) ; 9 COLLIER ON BANKRUPTCY ¶ 3001.01[1], p. 3001-6 (17th ed., Richard Levin, Henry Sommer, eds.). The proof also must attach writings on which the claim is based. Fed. R. Bankr. P. 3001(c). Where, as is apparently the case here, the claim against this individual debtor includes fees or expenses, the creditor is required to file with her proof of claim an itemized statement of the fees and expenses. Fed. R. Bankr. P. 3001(c)(2)(A).
Ms. DeKroon has not filed any itemization of the attorney's fees and expenses she claims and the documents filed in support of it fail to establish that the Debtor is indebted to her for $7,500 whether for attorney's fees or otherwise. Accordingly, her proof of claim does not constitute prima facie evidence of the validity and amount of the claim under Bankruptcy Rule 3001(f) and she bears the burden to establish the validity and amount of her claim.
There is no dispute that Ms. DeKroon has no valid claim for the $4,132 awarded in the General Order. It is also not disputed that this amount refers to a separate award to lawyers appearing in the divorce case, not to Melissa. She does not contend *785 that she has any right to that award by assignment or otherwise. Nor is it disputed that neither the General Order nor the Dissolution Judgment award her $7,500 for attorney's fees. Rather, the Dissolution Judgment indicates only that the parties are in agreement that the Debtor "should contribute to Melissa's attorney's fees and costs; however, they disagree on the amount of the contribution. The issue of the amount of the contribution is reserved and may be brought before the court." (Dissolution Judgment ¶ 10.) The state court entered no award, and did not even disclose that it would enter an award, stating only that the issue of the amount of the contribution "may be brought before the court for resolution." (Id. )
Ms. DeKroon, may have brought such a petition before this case commenced. The General Order suggests as much. But the petition was not acted upon, and indeed, despite every opportunity to do so, Ms. DeKroon has not even filed a copy of it with this court. To be sure, she alleges in her affidavit that her attorney's fees have exceeded $20,000 for the divorce, an amount that she then alleges was inflated because of the Debtor's conduct. (Melissa DeKroon Affidavit ¶¶ 28, 29 (ECF No. 56). See also Id. ¶ 27.) However, as the Dissolution Order makes clear, Melissa does not have a valid enforceable agreement with the Debtor for the claimed $7,500 - or any sum certain. Afforded every opportunity to supplement the sparse record and further respond to the objection she failed to do so, not even showing for or appearing by telephone at the hearing to consider the evidence of the claims and objections. Nor has Melissa offered any proof as to what, if anything, she was entitled to receive in the divorce proceedings for the attorney's fees under Illinois law, leaving us to conjecture what, if anything that might be. That we cannot do.
Accordingly, we must find that Melissa DeKroon has failed to meet her burden to establish the validity and amount of Claim 3-1. The Debtor's objection to Ms. DeKroon's priority unsecured claim in the amount of $7,500, therefore, will be sustained and Claim 3-1 disallowed. As such, it is not necessary to consider the Debtor's objection to the priority status the creditor asserts for this claim.
Finally, we note Ms. DeKroon's objection to confirmation of the Debtor's initial proposed Chapter 13 Plan. (ECF No. 26.) As noted above, she raises the plan's failure to provide for the priority treatment of her alleged claims for domestic support obligations and that it has not provided for the amounts of those claims. To the extent that her objection has not been addressed by his subsequent amendments to the proposed plan, we further overrule her objection for the reasons set forth above, noting that the plan, as amended, provides for repayment of all allowed non priority unsecured claims. This ruling does not relieve the Debtor of proving that he is current and has provided for all his domestic support obligations.

Shortly afterward, Ms. DeKroon also filed her written objection to confirmation of the Debtor's proposed Chapter 13 plan for failing to "mention" her two "domestic support obligation judgments" and not providing for their payment. (ECF No. 26.) The Debtor has amended his plan three times since then; the third, filed on April 25, 2018 (ECF No. 77), awaiting confirmation. Ms. DeKroon, however, has not filed written objections since January 2, 2018.

Although Subpart (a)(1)(B) is also referenced in Claims 2-1 and 3-1, there is no dispute that this subpart which refers to assigned DSO claims is not applicable.