NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0411n.06

Case No. 22-5270

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| IN RE: MICHELLE DOUGHERTY-KELSAY, | ) | **FILED** |
| Debtor. | ) ) | Oct 17, 2022 |
| _____ | ) | DEBORAH S. HUNT, Clerk |
| MICHELLE DOUGHERTY-KELSAY, | ) ) |  |
| Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) |  |
| MICHAEL STEPHEN KELSAY, | ) ) | OPINION |
| Appellee. | ) ) |  |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

SUTTON, Chief Judge. After Michelle Dougherty-Kelsay filed a bankruptcy petition, a Kentucky court held a hearing about her outstanding child support obligations and her ex-husband Michael Kelsay continued to try to collect them. Michelle claims that these actions violated the automatic stay that protects individuals who seek protection from their creditors through the bankruptcy process. In view of the Bankruptcy Code's exception for some family support obligations, the bankruptcy court agreed in part and disagreed in part. Michelle appealed, and the bankruptcy appellate panel affirmed. So do we.

I.

After marrying, having three children, and sharing a family for six years, Michelle and Michael divorced. In May 2017, Michael requested child support in a Kentucky circuit court. The court ordered Michelle to pay a fixed monthly sum in child support and 32% of qualifying childcare expenses. The fixed sum would be subtracted from Michelle's wages. As to any childcare expenses, Michael had to send Michelle an invoice, and Michelle had to pay or object within 30 days.

The arrangement soon unraveled. Within three months, Michael filed for contempt. Michelle refused to pay expenses, he complained, and she questioned "what is or is not included as an expense." R.26-4 at 2, 4. The circuit court scheduled a hearing for February 2018.

Two events occurred first. One was a routine sports injury. On January 7, 2018, Michael and Michelle's son hurt his nose while wrestling. As a precaution, Michael took him to a hospital for an x-ray. A medical bill followed. Under the child support order, Michelle had to pay the hospital $112 within 30 days after Michael sent her the invoice. Michael received the hospital invoice on January 30 and sent it to Michelle on February 6, asking her to pay $112 as her portion of the bill.

The other event was a bankruptcy petition, which Michelle filed on January 25, 2018. Michelle did not include Michael in the initial creditor matrix; she added him on February 13, 2018, after Michael had sent the February 6 medical bill. She told Michael and the circuit court that her bankruptcy petition automatically stayed most proceedings against her.

At the February hearing before the circuit court, Michelle argued that her bankruptcy petition stayed the proceeding. But the court agreed with Michael that the stay did not apply because the hearing related to Michelle's domestic support obligations.

Pressing on to the merits of the dispute, the court heard testimony and decided that Michelle owed $1,270.66 in past-due childcare expenses and memorialized the amount in a judgment. That sum did not include the $112 in medical expenses. To satisfy the judgment, the court increased the monthly withholding of Michelle's wages by $50. The court also found Michelle in contempt for failing to comply with its past orders.

The court's order triggered laws that require Kentucky and the federal government to seize tax refunds to pay past-due support that has been liquidated in a judgment. *See* 42 U.S.C. § 664; Ky. Rev. Stat. Ann. § 131.560. Relying on the judgment, those governments intercepted $1,270.66 from Michelle's refunds and rerouted it to Kentucky's child support department, which sent the money to Michael. With the $1,270.66 owed to Michael now paid, the court stopped the $50 increase in Michelle's wage garnishment.

After the hearing, Michael asked Michelle to pay the $112 in medical expenses. Michelle refused, citing the bankruptcy stay. Frustrated, Michael filed another contempt motion with the circuit court. Michelle looked to another forum in response. She filed a motion in bankruptcy court, arguing that Michael's motion violated the automatic stay. In response, Michael withdrew the contempt motion, but he continued to ask Michelle to pay the medical expense.

The bankruptcy court's order was not the panacea Michelle hoped. Some aspects of the order favored her, to be sure. The court ruled that the circuit court violated the stay by holding her in contempt and that Michael violated the stay by filing the final contempt motion. As a result, the bankruptcy court awarded Michelle $4,313.75 in attorney's fees and $1,000 in punitive damages.

But the rest of the order favored Michael. The bankruptcy court decided that the circuit court's judgment, the wage garnishment order, and the tax intercepts did not violate the stay. The bankruptcy court also found that the $112 medical expense was not subject to the stay.

Michelle appealed to the bankruptcy appellate panel. The appellate panel affirmed. While it agreed with Michelle that the medical expense was subject to the stay, the appellate panel decided that this error would not change the bankruptcy court's damage award. Michelle appeals again.

## II.

Michelle's appeal features two issues: Did the state circuit court permissibly determine her child support obligations or did the proceeding violate the automatic stay? And did the request for medical expenses violate the automatic stay? We review the bankruptcy court's legal conclusions afresh and its fact findings for clear error. *See In re Bagsby*, 40 F.4th 740, 745 (6th Cir. 2022).

## A.

When a debtor files for bankruptcy, the petition automatically stays other actions against the debtor. *See* 11 U.S.C. § 362(a). Bankruptcy courts generally have exclusive jurisdiction over the property of the debtor. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir. 2001). But exceptions exist, and one applies here. The automatic stay does not apply to a civil action that is "for the establishment or modification of an order for domestic support obligations." 11 U.S.C. § 362(b)(2)(A)(ii). Domestic support obligations include debts established by a court order that are "in the nature of" maintenance or support, "without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A); *see* 1 Collier on Bankruptcy § 1.05 (16th ed. 2022).

The circuit court's order fell within this exception. After hearing testimony on the past-due child support, the circuit court amended the existing support order to increase the amount withheld from Michelle's wages by $50 per month, with the judgment for $1,270.66 describing the total to be withheld. R.26-10 at 3 (explaining that garnishment was "toward satisfaction of this judgment"). That order either established a new domestic support obligation of $50 per month or amended the existing one. It fell within the exception either way. Because an exception to the automatic stay applies, the circuit court had jurisdiction to enter the judgment. *See Chao*, 270 F.3d at 383.

The circuit court also had jurisdiction for a second reason. The $1,270.66 judgment itself established or modified Michelle's domestic support obligations. As the bankruptcy court and the appellate panel explained, "establish" can mean to fix, determine, or settle. R.193 at 19; R.262 at 8–9; *see also Establish*, Black's Law Dictionary (11th ed. 2019). And the Code defines a domestic support obligation as "a debt" that is "in the nature of" support and is "established" by a court order. 11 U.S.C. § 101(14A). Read together, these provisions describe what the circuit court did when it heard testimony, when it resolved Michael and Michelle's disputes over childcare expenses, and when it entered a judgment fixing the debt Michelle owed as support.

Michelle challenges this conclusion on several grounds. She begins with a jurisdictional objection. The entire circuit court proceeding was void, she insists, because it rested upon entry of the $1,270.66 judgment and no stay exception expressly permits entry of a judgment. But that analysis starts at the wrong end. The circuit court had jurisdiction to alter the wage garnishment and we see no reason that it could not find facts before doing so and include those facts in the judgment. *See In re Grinspan*, 597 B.R. 725, 737 (Bankr. E.D.N.Y. 2019) (reasoning that a money

judgment can be a part of a domestic support obligation). Michelle offers no support for the unusual idea that a court with jurisdiction may not enter judgment.

Michelle persists, arguing that the circuit court proceeding amounted to a contempt hearing. True, such hearings may violate the stay, and the circuit court's hearing was—in part—one for contempt. *See In re White*, 478 B.R. 177, 181 (Bankr. S.D.N.Y. 2012). That is some of what Michael's motion requested after all. But the bankruptcy court honored the point when it concluded that the circuit court's contempt finding was void, a conclusion no one challenges here. As to the remainder of the relief sought, the circuit court established domestic support obligations, altered Michelle's wage withholding, and—in response to a point contested by the parties—clarified the amount of outstanding expenses. These last rulings were not the acts of a contempt proceeding. *See In re Trentadue*, 837 F.3d 743, 751 (7th Cir. 2016). Because the remainder was "tailored" to the stay exceptions, the bankruptcy court saw no reason to treat the entire proceeding as one for contempt. R.193 at 18; *see Chao*, 270 F.3d at 383. Nor do we.

Michelle also claims that Michael did not carry his burden of showing that an exception to the stay applied. But because Michelle is the one seeking damages for a stay violation, she is the one who must show that a violation occurred. *See, e.g.*, *In re McCormick*, Nos. 17-8039, 17-8040, 18-8015, 2018 WL 6787558, at *5 (B.A.P. 6th Cir. Dec. 26, 2018); *In re Collett*, Nos. 13-8033, 12-61190, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014).

Because the circuit court had jurisdiction to enter the wage garnishment order and the judgment, we can make quick work of the remaining objections to the bankruptcy court's decisions. For one, Michael did not violate the stay by failing to stop the circuit court hearing because the court indeed had jurisdiction over it. *See In re Wohleber*, 596 B.R. 554, 575 (B.A.P. 6th Cir. 2019). For another, the tax intercepts—by which Kentucky and the federal government

seized $1,270.66 from Michelle's tax refunds—were valid. The seizures did not violate the stay because they fell within the exception for "the interception of a tax refund" under a state court order. 11 U.S.C. § 362(b)(2)(F). For still another, Michael did not violate the stay by keeping the money the two sovereigns gave to him. Any other approach would override this exception to the automatic stay.

B.

Michelle argues that Michael's efforts to collect the $112 in medical expenses for her son's wrestling injury violated the stay. Both parties agree that an exception to the automatic stay does not apply in this instance. That leaves two potential questions: whether Michael's claim to the $112 arose before or after Michelle filed for bankruptcy and whether, even if it arose pre-petition, it would have changed the underlying damages that the bankruptcy court awarded.

The Bankruptcy Code stays efforts "to recover a claim against the debtor that arose before" the debtor filed for bankruptcy. 11 U.S.C. § 362(a)(1). Creditors who violate the stay must pay the debtor's actual damages and, if they acted willfully, punitive damages. *See id.* § 362(k). The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A "right to payment" is "nothing more nor less than an enforceable obligation." *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

We need not resolve whether Michael's right to payment arose before or after Michelle filed for bankruptcy. Why? Even if it arose pre-petition, it made no difference in Michelle's actual or punitive damages. Based on Michael's other violations of the stay, the bankruptcy court awarded Michelle $4,313.75 in attorney's fees as her actual damages and $1,000 in punitive

damages. Labeling the medical expense as a pre-petition claim matters only if it would lead to greater damages. The bankruptcy appellate panel reasoned that, even if the medical expense arose pre-petition, litigation over this modest expense would not change the bankruptcy court's damage calculations. That is a reasonable conclusion. Bolstering the conclusion is the reality that Michelle never objects to it or for that matter responds to the bankruptcy appellate panel's reasoning. Under these circumstances, we need not decide the right test for determining whether an expense like this one arose before or after the petition. It suffices to say that, either way, Michelle Dougherty-Kelsay was not injured in the process.

We affirm.